[L.A. No. 31381. June 8, 1981.]

In re the Marriage of VERA and EARL GILLMORE.
VERA GILLMORE, Appellant, v.
EARL GILLMORE, Respondent.

COUNSEL

Michael Meaney and Meaney & Player for Appellant.

Christopher J. Schatz, Kimberly J. Grove and Sheela, Lightner & Castro for Respondent.

OPINION

**BIRD, C. J.,**—Did the trial court abuse its discretion in a dissolution action when it refused to order the immediate payment of a nonemployee spouse's interest in a retirement benefit, where the employee spouse was eligible to retire and receive the benefit but had chosen not to do so?

### I.

Vera and Earl Gillmore separated in 1978 after a marriage of 14 years. The trial court issued an interlocutory decree dissolving their marriage on November 27, 1978, and entered a final judgment of dissolution on January 19, 1979. The decree awarded Vera physical custody of their minor child as well as $225 per month child support and $100 per month spousal support.

The community property was divided evenly, with the exception of Earl's interest in a retirement plan managed by his employer, Pacific Telephone Company. The court found that Earl would become eligible to retire on April 11, 1979, at which time he would be entitled to a monthly benefit of $717.18. Vera's interest in that benefit was found to be approximately $177.14 per month. The court specifically reserved jurisdiction over the retirement plan.

Earl continued to work after he became eligible to retire in April 1979. He represented that he was a "healthy, active man" in his early 50's, and he intended to work for some time to come. He was not required to retire until he reached the age of 70.

In July 1979, Vera requested an order directing Earl to pay to Vera her share of the pension benefits immediately, retroactive to the date he became eligible to collect them. Earl responded with a request to modify child and spousal support. The trial court denied both requests, retained jurisdiction over the retirement benefits, and held that it had discretion to delay distribution of the benefits until Earl actually retired.

## II.

■ Under California law, retirement benefits earned by a spouse during a marriage are community property, subject to equal division upon the dissolution of that marriage. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164; Civ. Code, § 4800.)[1] This is true whether the benefits are vested or nonvested, matured or immature. (*Brown, supra,* at p. 842.)[2] Vera and Earl agree that Earl's retirement benefits are community property to the extent they were earned during their marriage. ■ The sole disagreement concerns the *timing* of the distribution of those benefits. Vera contends that the trial court abused its discretion when it refused to order Earl to begin immediate payments to her of her share. Earl claims that the trial court had discretion to postpone distribution of the benefits until he actually retired and began to receive payments from the pension plan.

---

[1]*Brown, supra,* 15 Cal.3d at page 851, footnote 14, disapproved the following cases, cited hereinafter, only so far as they declared nonvested pensions did not constitute a divisible community property interest: *Smith* v. *Lewis* (1975) 13 Cal.3d 349 [118 Cal. Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231]; *In re Marriage of Fithian* (1974) 10 Cal. 3d 592 [111 Cal.Rptr. 369, 517 P.2d 449]; *Waite* v. *Waite* (1972) 6 Cal.3d 461 [99-Cal.Rptr. 325, 492 P.2d 13]; *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32 [89 Cal.Rptr. 61, 473 P.2d 765]; *In re Marriage of Martin* (1975) 50 Cal.App.3d 581 [123 Cal.Rptr. 634]; *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642 [115 Cal.Rptr. 184]; *Bensing* v. *Bensing* (1972) 25 Cal.App.3d 889 [102 Cal.Rptr. 255].

[2]A "vested" benefit cannot be forfeited if employment ends. Rather, it "survives the discharge or voluntary termination of the employee." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 842.) A retirement benefit "matures" when the employee has an unconditional right to payment, i.e., all the "conditions precedent to the payment of the benefits have taken place or are within the control of the employee. [Citations.]" (*In re Marriage of Fithian, supra,* 10 Cal.3d at p. 596, fn. 2; *Brown, supra,* 15 Cal.3d at p. 842; *Smith* v. *Lewis, supra,* 13 Cal.3d at p. 355, fn. 4; *In re Marriage of Peterson,*

■ Trial courts have considerable discretion to determine the value of community property and to formulate a practical way in which to divide property equally. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 603 [153 Cal.Rptr. 423, 591 P.2d 911].) However, that discretion has been strictly circumscribed by the statutory requirement that *all* community property be divided *equally* between the parties. (Civ. Code, § 4800.)[3] A trial court has been held to abuse its discretion when it improperly classifies community property as the separate property of one of the spouses or fails to arrive at an equal division of the community property. (*In re Marriage of Olson* (1980) 27 Cal.3d 414, 422 [165 Cal.Rptr. 820, 612 P.2d 910]; *In re Marriage of Brown, supra*, 15 Cal. 3d at p. 847.)

■ Under the cases and statutory law, Earl cannot time his retirement to deprive Vera of an equal share of the community's interest in his pension. It is a "settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse." (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 786 [148 Cal.Rptr. 9, 582 P.2d 96]. See also *Waite* v. *Waite, supra*, 6 Cal.3d at p. 472; *In re Marriage of Peterson, supra*, 41 Cal.App.3d at pp. 650-651.)

Earl's retirement benefits are both vested and matured. (See *ante*, fn. 2.) He will not forfeit his benefits if he leaves his employment voluntarily, is terminated or retires. The only condition precedent to payment of the benefits is his retirement, a condition totally within his control. A unilateral choice to postpone retirement cannot be manipulated so as to impair a spouse's interest in those retirement benefits.

*In re Marriage of Stenquist, supra*, 21 Cal.3d 779, involved a husband's election to receive disability benefits (usually separate property), rather than retirement pay (usually community property). This court held that the husband could not use this election to deprive his wife of her interest in his retirement benefits. "[T]o permit the husband, by

---

*supra*, 41 Cal.App.3d at pp. 649-650.) Earl's benefits have vested in that if he retires or loses his job for any reason he will be entitled to immediate benefits. They have matured in that the sole condition on his enjoyment of the benefits, his retirement, is within his control.

[3]Section 4800 provides in pertinent part that except in certain narrow circumstances (see § 4800, subds. (b) and (c)), "the court shall ... divide the community property and the quasi-community property of the parties ... equally." (Civ. Code, § 4800, subd. (a).)

unilateral election of a 'disability' pension, to 'transmute community property into his own separate property' (*In re Marriage of Fithian, supra*, 10 Cal.3d 592, 602), is to negate the protective philosophy of the community property law as set out in previous decisions of this court." (*Stenquist, supra*, 21 Cal.3d at p. 782.)

The result of the husband's unilateral decision in *Stenquist* would have been to deprive the wife of any interest in his retirement benefits. In the present case, Vera is no less entitled to protection. The fact that the deprivation she faces is less than total is not decisive. Earl would deprive Vera of the immediate enjoyment of an asset earned by the community during the marriage. In so doing, he would subject Vera to the risk of losing the asset completely if Earl were to die while he was still employed. Although Earl has every right to choose to postpone the receipt of his pension and to run that risk, he should not be able to force Vera to do so as well.[4]

The case of *In re Marriage of Luciano* (1980) 104 Cal.App.3d 956 [164 Cal.Rptr. 93], is directly on point. In *Luciano*, the trial court ordered that a nonemployee spouse must wait until the employee spouse actually retires before receiving his or her share of the retirement benefits. The Court of Appeal held that "[t]o uphold the trial court's ruling as to the *time* Dorothy is to commence receiving her portion of this community asset would give Ferdinand the option of determining the receipt by Dorothy of her own property which would be basically

---

[4]Earl claims that the trial court's decision resulted in an equal division of the retirement benefits since he and Vera will receive their shares of the benefits at the same time—the time that he chooses to retire. However, he overlooks the fact that both the timing of receipt and the control of an asset are important aspects of its value. "Postponement, especially late in life, is often the equivalent of complete defeat. Not only are the employee spouse's chances of dying on the job increasing with each passing year (in which case the pension rights would vanish under most plans), the present value of money is much more valuable as a person enters the last years of his life." (Note, *In re Marriage of Stenquist: Tracing the Community Interest in Pension Rights Altered by Spousal Election* (1979) 67 Cal.L.Rev. 856, 879, fn. 76.) A benefit which may be received at some unknown time in the future is of less value than one received immediately. (*In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, 931 [134 Cal.Rptr. 161]; see Projector, *Valuation of Retirement Benefits in Marriage Dissolutions* (1975) 50 L.A. Bar Bull. 229.) Further, a benefit over which an individual has no control is of less value than a benefit that can be managed personally. Thus, Earl's decision to wait to receive his pension when it will be most profitable and most convenient for him deprives Vera of both the immediate enjoyment of her benefits and the power to manage them to her own advantage. Her financial situation may involve factors significantly different from his. Both the husband and the wife should be able to make their independent decisions about how to handle their shares of the community property.

unfair. The employee spouse cannot by election defeat the nonemployee spouse's interest in the community property by relying on a condition solely within the employee spouse's control. [Citations.] . . . [¶] A proper order for a trial court to make in these circumstances is that the nonemployee spouse is the one who has the choice as to when his or her share of the pension shall begin." (*Id.,* at p. 960.)

Similar results were reached in two earlier cases. In *In re Marriage of Martin, supra,* 50 Cal.App.3d 581, the appellate court held that where the only condition to receipt of the benefits by one spouse was the employee spouse's decision to retire and apply for them, the benefits should be divided as community property. The language of the court is instructive. "The only condition to the payment of the pension benefits is a condition entirely within [the husband's] control, and that is not an uncertainty precluding division of the asset upon dissolution of marriage." (*Martin, supra,* 50 Cal.App.3d at p. 584.) Similarly a trial court decision to order the immediate payment of a share of a husband's vested, matured pension benefits to his wife, where the husband was eligible to retire but had not yet done so, was upheld in *Bensing* v. *Bensing, supra,* 25 Cal.App.3d at pages 892-893.[5]

These cases, however, do not preclude the employee spouse from choosing among alternative retirement plans. The employee spouse retains the right (1) to change or terminate employment; (2) to agree to a modification of the retirement benefits; or (3) to elect between alternative benefits. (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 849.) "[T]he employee spouse retains the right to determine the nature of the benefits to be received." (*In re Marriage of Stenquist, supra,* 21 Cal.3d at p. 786, fn. omitted.)

The right of the employee spouse is nonetheless limited by the fact that the nonemployee spouse owns an interest in the retirement benefits. Thus, *Brown* notes that the employee spouse has a right to agree to "a

---

[5]See also *In re Marriage of Adams* (1976) 64 Cal.App.3d 181, 185-186 [134 Cal.Rptr. 298], finding that a nonemployee spouse had the option of taking her share of the benefits either at the time of dissolution or at the time the employee spouse retired.

To the extent that it conflicts with this court's present holding, dictum in *In re Marriage of Freiberg* (1976) 57 Cal.App.3d 304, 311 [127 Cal.Rptr. 792], which suggests that the employee spouse can control the time at which the retirement payments to the nonemployee will commence, is disapproved. The nonemployee spouse in that case apparently did *not* request immediate distribution of the benefits. Further, the timing of the distribution was not before the court.

reasonable, *nondetrimental* modification of the pension system" (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 849, fn. 11, italics added), and *Stenquist* finds that the employee spouse retains the right to elect "*higher than ordinary* retirement benefits." (*In re Marriage of Stenquist, supra*, 21 Cal.3d at p. 786, fn. 6, italics added.) If the right to choose among alternative retirement plans is exercised in a way which impairs the nonemployee's interest in the benefits, the nonemployee spouse must be compensated.[6]

Thus, although the husband in *Stenquist* had every right to choose a disability pension rather than retirement pay, his choice did not prevent the court from ordering him to pay to the wife an amount equivalent to what her interest would have been had he chosen retirement pay. Similarly, Earl retains the right to determine what retirement benefits he will receive. He can retire now or at some time in the future. He also retains the option of choosing between the alternative pension plans offered by his employer. However, if he opts for an alternative that deprives Vera of her full share of the retirement benefits, he must compensate her for the interest she loses as a result of his decision.

■ Compensation is possible here because the value of Vera's interest is known to the court. Also, the only condition to the payment of the benefits, Earl's retirement, is entirely within his control. However, "if the court concludes that because of uncertainties affecting the vesting or maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid." (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 848, fn. omitted.) In this case, the pension benefits have already vested and matured. There are no "uncertainties affecting . . . vesting or maturation" that could lead the trial court to conclude that distribution of the pension must be delayed. Therefore, the trial court abused its discretion when it refused to order the immediate distribution of this vested and mature retirement benefit.

---

[6]Trial courts can limit the employee spouse's freedom to choose to the extent necessary to protect the interests of the nonemployee spouse. For instance, *In re Marriage of Lionberger* (1979) 97 Cal.App.3d 56, 67-70 [158 Cal.Rptr. 535], affirmed a trial court order precluding the husband from choosing a pension plan option that would have decreased the size of his wife's interest. In *Phillipson v. Board of Administration, supra*, 3 Cal.3d 32, 48, the court ordered the husband to choose a particular retirement benefit because such an order was the only way to protect the wife's interest. See also *Ball v. McDonnell Douglas Corp.* (1973) 30 Cal.App.3d 624, 630-631 [106 Cal.Rptr. 662], in which the appellate court noted that the trial court could have made an order limiting the employee's freedom to choose among alternative plans if the nonemployee spouse had requested it.

Earl's claim that he is being forced to retire misses the point. He is free to continue working. However, if he does so, he must reimburse Vera for the share of the community property that she loses as a result of that decision. His claim that the court lacks jurisdiction to order him to make payments to Vera because it lacks jurisdiction over his separate property also lacks merit. Earl alone will make the decision to use separate property to reimburse Vera, when and if he decides not to retire. His situation is not unlike that faced by a couple ordered to divide a house that they own as community property. If one of the spouses chooses to keep the house, he or she is free to use separate property to purchase the other's interest. Here, Earl must divide his retirement benefits with Vera. If he does not wish to retire, he must pay her an amount equivalent to her interest.[7]

Earl's suggestion that Vera can be adequately compensated through spousal support is contrary to current law. ■ "As we have affirmed many times, adjustments in the amount of alimony awarded will not mitigate the hardship caused the wife by the denial of her community interest in the pension payments. Alimony lies within the discretion of the trial court and may be modified with changing circumstances: 'the spouse "should not be dependent on the discretion of the court ... to provide her with the equivalent of what should be hers as a matter of absolute right."' (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 848.)" (*In re Marriage of Stenquist, supra,* 21 Cal.3d at p. 787, fn. 8.)

Earl asserts that Vera should be required to demonstrate a financial need to justify the immediate distribution of the retirement benefits. ■ However, financial status is not relevant when dividing

---

[7]One commentator argues that when an employee who is eligible to retire chooses to continue working, part of his or her salary is actually attributable to community effort. "[F]rom an economist's perspective, the employee spouse's compensation for continued employment is not the full amount of his paycheck. Rather, his compensation is only that amount above the pension benefits that he will not receive while he continues working. For example, in the matured pension situation, if the employee can receive retirement pay in the amount of X dollars without working, then his actual compensation for services rendered is not the amount of his paycheck, Y dollars, but Y minus X dollars. This is nothing more than a reapplication of the 'benefits foregone' formula of *Stenquist* [21 Cal.3d 779]. [Fn. omitted.] Therefore, rather than penalizing the spouse for not retiring, the contrary is true—the community is being penalized because it is forced to subsidize the employee spouse's salary, which becomes his separate property." (Note, *In re Marriage of Stenquist: Tracing the Community Interest in Pension Rights Altered by Spousal Election, supra,* 67 Cal.L.Rev. 856, 879.)

Since this court does not find any taking of separate property, it is not necessary to discuss Earl's constitutional claim.

community property. The courts are statutorily required to divide community property equally. (Civ. Code, § 4800.) A court may consider the equities of the parties' financial situations in determining *spousal support*, but only after the community property has been equitably divided. The retirement benefit must first be divided equally. Earl may then renew his motion for a modification of spousal support in light of this new distribution of the community property.[8]

In the past, this court has encouraged trial courts, if feasible, to award all pension rights to an employee spouse, compensating the nonemployee spouse with other community property of equal value. (*In re Marriage of Skaden* (1977) 19 Cal.3d 679, 688-689 [139 Cal.Rptr. 615, 566 P.2d 249]; *In re Marriage of Brown, supra*, 15 Cal.3d at p. 848, fn. 10; *Phillipson* v. *Board of Administration, supra*, 3 Cal.3d at p. 46.) This type of a division was not possible here since the trial court severed the issue of retirement benefits from the division of the remainder of the community property. At the time the retirement benefits were to be divided, the community property had already been distributed. As a result, there was no longer any community property which could be offset against the retirement benefits.

Frequently, parties are able to arrive at a reasonable settlement of these issues. (*In re Marriage of Skaden, supra*, 19 Cal.3d at pp. 688-689.) For example, the nonemployee spouse may choose to wait, preferring to receive the retirement benefits when the employee spouse actually retires. ■ The nonemployee may thereby ensure some protection for the future and may be able to share in the increased value of the pension plan. (See *In re Marriage of Adams, supra*, 64 Cal.App.3d at p. 186.)[9] However, if the nonemployee spouse chooses to receive immediate payments, as Vera does, he or she has a right to do so. ■ Any inequities caused by the immediate distribution of retirement benefits can be resolved through adjustments in spousal support.

---

[8]"Of course, the [respondent] spouse may seek a prospective modification of his or her support payments in light of any new partition of an asset not previously adjudicated." (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 332, fn. 8 [161 Cal.Rptr. 502, 605 P.2d 10].)

[9]The nonemployee spouse, of course, cannot have it both ways. The decision to ask for distribution of the retirement benefits before the employee spouse actually retires "constitutes an irrevocable election to give up increased payments in the future which might accrue due to increased age, longer service and a higher salary." (*In re Marriage of Luciano, supra*, 104 Cal.App.3d at p. 961, citation omitted.) Thus, if Vera chooses to receive her share of the retirement benefits immediately, she will forfeit her right to share in the increased value of those benefits in the future.

There are various ways in which Earl could compensate Vera. He could "buy out" her share of the retirement benefits, paying her the present value of her share of the pension plan. (See Projector, *supra*, 50 L.A. Bar Bull. 229; Hardie, *Pay Now or Later: Alternatives in the Disposition of Retirement Benefits on Divorce* (1978) 53 State Bar J. 106.) Or, he could begin to pay her a share of the retirement payments on a monthly basis. (E.g., *In re Marriage of Martin, supra*, 50 Cal.App.3d at p. 585; *Bensing* v. *Bensing, supra*, 25 Cal.App.3d at pp. 893-894.) Both of these methods of payment constitute an equal distribution of the benefits. However, the parties may have preferences based on numerous factors not presently before this court, including the tax consequences of the alternative plans. Therefore, the exact method of distribution must be left to the discretion of the trial court on remand.

### III.

That portion of the trial court's order denying Vera's request for the immediate distribution of her share of Earl's retirement benefits is reversed. The cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Tobriner, J., Mosk, J., Richardson, J., Newman, J., Barry-Deal, J.,* and Kongsgaard, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.