In re Alfred C. GRANADOS, Debtor.

Alfred C. GRANADOS, Plaintiff,

v.

Carolyn GRANADOS, Defendant.

Bankruptcy No. 92–90969–A–7.
Adversary No. 97–9047.
Motion Control Nos. NR–1, LWB–1.

United States Bankruptcy Court,
E.D. California,
Modesto Division.

Oct. 22, 1997.

Leonard W. Blok, III, Fair Oaks, CA, for Plaintiff Alfred C. Granados.

Mike K. Nakagawa, Sacramento, CA, appearing for Defendant Carolyn C. Granados.

## MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

Plaintiff Alfred C. Granados commenced this adversary proceeding to determine the dischargeability of his obligation to pay his former spouse, defendant Carolyn C. Granados, 30% of his federal retirement benefits upon his eligibility to receive those benefits rather than upon his actual retirement. Each party has filed a motion for summary judgment. The court concludes that the plaintiff's chapter 7 discharge does not bar

the defendant from collecting her interest in the retirement benefits effective from the date the plaintiff was eligible to retire. Accordingly, judgment will be entered for the defendant.

### I. Facts

The plaintiff and the defendant were married on September 9, 1962, and separated on June 28, 1989. On February 14, 1990, the defendant filed a petition for dissolution of their marriage in the Superior Court for the State of California, County of Sacramento. On May 15, 1991, the plaintiff and the defendant agreed that the defendant was entitled to 30% of the plaintiff's future federal retirement benefits.

On March 9, 1992, the plaintiff filed a petition under chapter 7 of the Bankruptcy Code. On July 21, 1992, the plaintiff received a discharge.

On or about February 27, 1993, the Superior Court issued an order awarding the defendant her share of the retirement benefits ("the 1993 Property Settlement Order"). The 1993 Property Settlement Order provided that the defendant "shall receive, as her one-half share of the community property portion of the monthly retirement benefit, thirty percent (30%) of the gross monthly benefit received by husband, including any increases."

On October 2, 1996, the defendant filed a motion in the Superior Court requesting that the plaintiff commence payment of her 30% share of the retirement. The Superior Court found that the plaintiff was eligible to draw retirement benefits as of September 1, 1996, shortly after he turned 55 years of age. He elected, however, to continue working and to defer receipt of his retirement benefits.

Citing *Gillmore v. Gillmore*, 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981), the Superior Court concluded that the defendant was entitled to her share of the retirement benefits directly from the plaintiff. The Superior Court also concluded that the defendant could not be required to wait for her share of the benefits because the plaintiff elected to postpone retirement.

On March 7, 1997, the Superior Court, in a handwritten order, held for the defendant

and ordered the plaintiff to make payments to the defendant commencing September 1, 1996. The order was later formalized and entered on the docket on September 8, 1997 ("the 1997 Payment Order").

On April 15, 1997, the plaintiff filed this adversary proceeding. His complaint seeks a declaration that the "Claim and/or Debt" arising by virtue of the 1997 Payment Order was discharged in the plaintiff's chapter 7 case.

On September 19, 1997, the defendant filed a motion for summary judgment in this adversary proceeding. In the motion, the defendant argues that (1) her right to payment of the retirement benefits under *Gillmore* is not a claim or a right that was discharged by the plaintiff's bankruptcy proceeding; and (2) this court should defer to the judgment of the state court in the interest of comity.

The plaintiff filed a counter-motion for summary judgment, arguing that the *"Gillmore"* right arose at the time of the agreement for dissolution, not at the time that the plaintiff reached 55 years of age and postponed his retirement. Because the agreement for dissolution predates his bankruptcy petition, the plaintiff asserts he has discharged his obligation under *Gillmore* to pay the defendant her share of the retirement benefits. The plaintiff concludes that the defendant must await his retirement to collect her share of the retirement benefits.

## II. DISCUSSION

A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c) as made applicable in this proceeding by Fed. R. Bankr.P. 7056.

The facts are not in dispute. The 1993 Property Settlement Order provided that the defendant receive, "as her one-half share of the community property portion of the monthly retirement benefit, thirty percent (30%) of the gross monthly benefit received by husband, including any increases."

The plaintiff had a right under the provisions of the retirement plan to retire and begin drawing the retirement when he turned 55 years of age. He elected not to do so. Pursuant to *Gillmore,* the defendant nonetheless demanded her 30% interest in the retirement fund. The Superior Court agreed with the defendant and issued the 1997 Payment Order compelling the plaintiff to begin paying the defendant's share of the retirement benefits.

This court must address two issues. First, were the rights of the defendant under the 1993 Property Settlement Order discharged in the plaintiff's chapter 7 bankruptcy? Second, if those rights survive, did the discharge nonetheless terminate the defendant's rights under *Gillmore* and discharge the plaintiff's obligation under the 1997 Payment Order?

### A.

As a preliminary matter, the court notes that the Superior Court had subject matter jurisdiction to determine whether the bankruptcy discharged the plaintiff's obligation to pay to the defendant her share of his retirement benefits in advance of his actual retirement. 28 U.S.C. § 1334(b); *Siragusa v. Siragusa,* 27 F.3d 406, 408 (9th Cir. 1994); *In re Franklin,* 179 B.R. 913, 919–923 (Bankr.E.D.Cal.1995).

While some exceptions to discharge, those at 11 U.S.C. § 523(a)(2), (4), (6), and (15), are within the exclusive jurisdiction of the Bankruptcy Court, the issue presented in this case is not whether the plaintiff's obligation fits within any of the exceptions to discharge enumerated in section 523(a). 11 U.S.C. § 523(a) & (c); *In re Franklin,* 179 B.R. at 919–923. Rather, it must be decided if the plaintiff's obligation is a "debt," and, if it is a debt capable of being discharged, whether it arose before or after the filing of the chapter 7 petition. In other words, this case implicates section 727(b) and not section 523(a). 11 U.S.C. § 727(b) provides:

a discharge under ... of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter....

The Superior Court did not exercise its jurisdiction to determine whether the obligation imposed by the 1997 Payment Order was discharged in bankruptcy. Neither the motion requesting the 1997 Payment Order nor the response to that motion raised the bankruptcy discharge as an issue. And the detailed findings in the 1997 Payment Order do not mention the effect of the plaintiff's bankruptcy discharge. The 1997 Payment Order determined only that the defendant's right to payment of her share of the retirement benefits commenced on the date the plaintiff was eligible to collect the retirement.[1]

The court, then, rejects the defendant's argument that "comity" or *res judicata* precludes it from deciding whether the obligation imposed on the plaintiff by the 1997 Payment Order was discharged by his chapter 7 petition.

### B.

■ There are two possible interpretations of the 1993 Property Settlement Order. The defendant could have been granted a 30% property interest in the retirement benefits or she could merely have been granted a claim against the debtor in an amount equal to 30% of the retirement benefits. *Aldrich v. Imbrogno (In re Aldrich)*, 34 B.R. 776, 780 (9th Cir. BAP 1983).[2]

The court concludes that the defendant has a property interest in the federal retirement benefits.

First, the 1993 Property Settlement Order provided that the defendant "shall receive, as her one-half share of the community property portion of the monthly retirement benefit, thirty percent (30%) of the gross monthly benefit received by husband, including any

increases." It is relevant and important that the Superior Court stated that the defendant was to receive the monthly payments "as her one-half share of the community property portion of the monthly retirement benefit...." The Superior Court characterized the interest as property.

Second, in his complaint, the plaintiff stated that he "does not deny Defendant has a property right in the Debtors [sic] retirement benefits as expressed in *Teichman v. Teichman*, 774 F.2d 1395 (9th Cir.1985)." The defendant's answer admitted this allegation.

In *Teichman v. Teichman*, 774 F.2d 1395 (9th Cir.1985), the Ninth Circuit determined that a spouse cannot discharge an obligation to pass through post-petition retirement benefits to a former spouse. In *Teichman*, the Superior Court had awarded to the debtor's former spouse "an amount equal to 43% of the gross monthly retirement benefits" on the basis that "86% of the [debtor's retirement was] community property." *Teichman*, 774 F.2d at 1397. The Bankruptcy Court held that the debtor "could not avoid future payments by [his] bankruptcy since [his former spouse] 'ha[d] an ownership interest in 43% of the retirement fund by reason of the final judgment in the [divorce proceedings]'" and that "[e]ach payment as it comes due is an obligation which the [husband] cannot avoid by this bankruptcy." *Teichman*, 774 F.2d at 1398. The District Court agreed with the Bankruptcy Court. The Ninth Circuit affirmed the District Court, finding that the debtor was a mere "conduit" through which retirement benefits flowed from the federal employer to the debtor's former spouse. *Id.*

1. These facts are consistent with the plaintiff's counsel's declaration which recounts that the Superior Court was specifically requested to not reach the bankruptcy discharge issue because the plaintiff intended to file this adversary proceeding.

2. In *Aldrich*, a case originally tried before the Bankruptcy Court for the Eastern District of California, the Superior Court had awarded the debtor's former spouse "monthly payments from the debtor of 36% of his military retirement

benefits as her portion of the total community interest therein." *Aldrich*, 34 B.R. at 777.

The Bankruptcy Appellate Panel wrote that it was "not clear from the record whether the [former spouse] asserted a property interest in 36% of [the debtor's] retirement benefits or whether she asserted that [the debtor] merely owe[d] her 36% of the retirement benefits of which he retain[ed] full ownership." *Aldrich*, 34 B.R. at 780. The Panel remanded the proceeding to the bankruptcy court for determination on that issue.

■ Therefore, the interest of a non-debtor spouse in the future retirement benefits of a debtor spouse is an interest in property. An interest in property is not dischargeable in bankruptcy. A discharge in bankruptcy discharges debts. 11 U.S.C. § 524(a)(1). A "debt" means a liability on a claim. 11 U.S.C. § 101(12). A "claim" means a right to payment, or a right to an equitable remedy. 11 U.S.C. § 101(5). A discharge extinguishes rights to payment. It does not extinguish interests in property. *See Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815, 818–819 (9th Cir.1997); *Chandler v. Chandler (In re Chandler)*, 805 F.2d 555, 557–558 (5th Cir.1986) (obligation to turnover proceeds of retirement pay representing ex-wife's former community property interest was an obligation to turn over her sole property and was not a dischargeable debt).

To the extent the debtor's initial receipt of the retirement pay created a debt to his former spouse, the Ninth Circuit found that the debt arose when the debtor received the retirement pay. Thus, any debt for post-petition retirement benefits did not arise until after the petition and could not be discharged in bankruptcy. *In re Teichman*, 774 F.2d at 1398, citing 11 U.S.C. § 727(b).[3]

### C.

■ The primary dispute presented in this case is whether the obligation imposed on the plaintiff by the 1997 Payment Order was discharged by his bankruptcy. That order requires the plaintiff to pay to the defendant her share of the retirement benefits even though he elected to postpone his retirement. The plaintiff argues that his bankruptcy discharge compels the defendant to wait until he retires to collect her share of the retirement benefits.

In *Gillmore*, the California Supreme Court held that an employed spouse's election to postpone receipt of a pension impairs the interest of the other spouse in the pension. This impairment permits the other spouse to demand compensation from the employed spouse. The Superior Court ordered such compensation when it required the plaintiff to pay the defendant her share of the federal retirement benefits as if he had retired.

The plaintiff argues that "the *Gillmore* [sic] right to immediate payment ... constitutes a 'Claim and/or Debt' at the time of [the plaintiff's] filing of his bankruptcy in which the Defendant was listed as a creditor." This argument is without merit. While *Gillmore* creates a claim against the plaintiff, the claim in this case did not arise "at the time of the filing of his bankruptcy."

The plaintiff turned 55 years of age, became eligible to receive his retirement, and elected to postpone his retirement, all after he filed his bankruptcy petition. Until all of these events occurred, the defendant had no right to collect her share of the retirement benefits from the plaintiff. Consequently, the defendant's right under *Gillmore* arose after the plaintiff filed his chapter 7 petition and is not subject to discharge by it. 11 U.S.C. § 727(b).[4]

■ The retirement benefits, by virtue of California's community property law and the

---

3. Contrast this to a case where the debtor receives the retirement pay prior to the bankruptcy petition but does not pass it through to his or her former spouse. The court in *Teichman* ruled that because the payments were paid and not passed through prior to the petition, they were dischargeable notwithstanding 11 U.S.C. § 523(a)(4), which provides that a debt arising from a defalcation by a fiduciary cannot be discharged. The court ruled that the debtor's failure to pay the former spouse his or her share of the retirement pay was not a breach of a fiduciary duty "created under an express trust." Rather, it was a duty that arose by virtue of a "trust created *ex maleficio*, constructively imposed because of the act of wrongdoing...." *Teichman*, 774 F.2d at 1398. The instant case does not involve any pre-petition payments.

4. Suppose a debtor sells a car to a creditor prior to filing a chapter 7 petition. After the petition is filed, the debtor throws a rock through the windshield. The resulting tort claim is not dischargeable simply because the debtor sold the car prior to his petition. The result should be no different in this case. The defendant acquired an interest in the plaintiff's retirement benefits prior to the filing of a chapter 7 petition. Post-petition, the plaintiff did something which impaired the value of those benefits—he postponed his retirement. While this postponement may not have been motivated by the same ill-will that is apparent in the rock-throwing debtor hypothetical, bad intentions aside, the defendant's property interest was nonetheless damaged. Because the act causing the damage and the damage occurred post-petition, the resulting claim is not dischargeable. 11 U.S.C. § 727(b).

1993 Property Settlement Order, are not the sole property of the plaintiff. Those benefits belong to both the plaintiff and the defendant. *In re Marriage of Brown,* 15 Cal.3d 838, 842, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). When the defendant made a unilateral decision to postpone retirement, he impaired the interest of the plaintiff in the retirement benefits. As noted by the California Supreme Court in *Gillmore:*

> 'Postponement, especially late in life, is often the equivalent of complete defeat. Not only are the employee spouse's chances of dying on the job increasing with each passing year (in which case the pension rights would vanish under most plans), the present value of money is much more valuable as a person enters the last years of his life.'

*Gillmore,* 29 Cal.3d at 424, 174 Cal.Rptr. 493, 629 P.2d 1, n. 4, [citation omitted]. Because the impairment of the defendant's interest occurred after the filing of the petition, any resulting claim is not subject to discharge. 11 U.S.C. § 727(b).[5]

Therefore, the obligation imposed upon the plaintiff by *Gillmore* and the 1997 Payment Order was not discharged by his chapter 7 bankruptcy.

### III. Conclusion

The defendant's motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied. The plaintiff owes the defendant a debt in the amount determined and liquidated by the Superior Court in its 1997 Payment Order. The claim to that amount was not discharged in the plaintiff's bankruptcy case.

---

**5.** There is a *quid pro quo.* In the words of the court in *Gillmore:*

> The nonemployee spouse, of course, cannot have it both ways. The decision to ask for distribution of the retirement benefits before the employee actually retires 'constitutes an irrevocable election to give up increased payments in the future which might accrue due to increased age, longer service and higher salary.' [Citation omitted.] Thus if [the nonemployee spouse] chooses to receive her share of the retirement benefits immediately, she will forfeit her right to share in the increased value of those benefits in the future.
>
> *Gillmore,* 29 Cal.3d at 428, n. 9, 174 Cal.Rptr. 493, 629 P.2d 1.