Filed 11/12/24  Marriage of Ehirim CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of DOMINIC and BIBIAN EHIRIM. | |
| DOMINIC EHIRIM, Appellant, v. BIBIAN EHIRIM, Respondent. | E080238 (Super.Ct.No. FAMRS1200537) OPINION |

APPEAL from the Superior Court of San Bernardino County.   Dina Issam Amani, Commissioner.  Affirmed.

Dominic Okechukwu Ehirim, in pro. per., for Appellant.

Gordon Lawyers and Christiaan J. Gordon for Respondent.

## I.  INTRODUCTION

This is the third appeal by appellant Dominic Ehirim in this marital dissolution proceeding.  The parties, Dominic and his former spouse, respondent Bibian Ehirim, married in 1989 and separated in 2009.  (*In re Marriage of Ehirim* (Oct. 12, 2017, E063531) [nonpub opn.] (*Ehirim I*).)  In 2016, the court entered judgment dissolving the marriage and adjudicating the parties' rights in various assets and liabilities.  (*In re Ehirim* (Sept. 14, 2020, E072397) [nonpub opn.] (*Ehirim II*).)  In 2019, the court entered judgment on reserved issues.  (*Ehirim II*, E072397.)  In the prior appeals, *Ehirim I* and *Ehirim II*, this court affirmed the 2016 and 2019 judgments, respectively.  (*Ibid*.)

In this appeal, Dominic challenges (1) the August 15, 2022 findings and orders concerning the parties' August 12, 2022 "Stipulated Order re: Award of *Gillmore*[1] Rights to [Bibian] and Wage Assignment on [Dominic's] Employer" (the Friendly *Gillmore* stipulation and order); (2) the October 6, 2022 orders directing Dominic to pay Bibian $10,000 in attorney fees and $2,250 in costs as sanctions (Fam. Code, § 271);[2] and (3) the February 8, 2021 order denying Dominic's September 3, 2020 motion to set aside the January 27, 2020 post-judgment order requiring Dominic to pay Bibian a total of $24,781 in attorney fees as sanctions.[3]

---

[1]  *In re Marriage of Gillmore* (1981) 29 Cal.3d 418 (*Gillmore*).

[2]  Undesignated statutory references are to the Family Code.

[3]  Commissioner Dina Issam Amani issued the February 8, 2021; August 15, 2022; and October 6, 2022 orders.  Judge Michelle H. Gilleece issued the January 27, 2020 judgment.

Regarding the August 15, 2022 and October 6, 2022 orders, Dominic claims the court erroneously determined the "start date" of his *Gillmore* payments to Bibian and abused its discretion in ordering Dominic to pay the $12,250 in attorney fees and costs as sanctions. Dominic also claims the court was biased against him and conspired with others to make rulings favorable to Bibian. Lastly, Dominic claims the court erroneously denied his September 3, 2020 motion to set aside the January 27, 2020 post-judgment order requiring him to pay Bibian the $24,781 in attorney fees as sanctions.

We conclude that Dominic's claims challenging the August 15, 2022 and October 6, 2022 orders lack merit, and we affirm those orders. We do not have jurisdiction to consider, thus we do not consider, Dominic's claim that the court erroneously denied his September 3, 2020 motion to set aside the January 27, 2020 order requiring him to pay $24,781 in attorney fees as sanctions, because Dominic did not timely appeal the February 8, 2021 order denying his September 3, 20220 motion. We conclude that Dominic's claims of judicial bias and conspiracy claims are unfounded. Thus, we affirm the challenged findings and orders in their entirety.

## II. DISCUSSION

### A. *The August 15, 2022 Orders on the Parties' Friendly* Gillmore *Stipulation*

Dominic claims the court erroneously determined the "start date" of his *Gillmore* payments to Bibian. We find no merit to this claim.

#### 1. Legal Principles

Under *Gillmore*, a nonmember spouse is entitled to *the value* of the nonmember's community interest in a member spouse's public retirement plan when the member

3

becomes eligible for retirement—that is, the nonmember is entitled to the amount the nonmember would have collected from the plan if the member retired when the member became eligible for retirement. (*Gillmore, supra*, 29 Cal.3d at p. 426.) If the member continues to work, the member must pay the nonmember the value of the nonmember's interest in the plan that the nonmember loses as a result of the member's decision to continue working and not retire. (*Id*. at p. 427.)

In *In re Marriage of Cornejo* (1996) 13 Cal.4th 381 (*Cornejo*), our Supreme Court explained its holding in *Gillmore*, and the choices that the member and nonmember spouses have when the member becomes eligible for retirement: "In [*Gillmore*], we held that retirement benefits that an employee spouse earns during a marriage to a nonemployee spouse are community property. On dissolution of the marriage, such benefits are subject to equal division. When the employee spouse becomes eligible for retirement, he may choose to retire and receive benefits or to continue to work. That is to say, he may retire and thereby commence drawing from the stream of income that then begins to flow, with the result that the nonemployee spouse may start to draw her share of the community property interest as well; or he may continue to work and thereby forgo the income he would have drawn, with the result that the nonemployee spouse is compelled to forgo what would have been her share as well. In brief, the employee spouse has an initial choice of retiring or continuing to work. He is not permitted, however, to adversely affect the nonemployee spouse's share by putting off his retirement. To prevent such an outcome, the nonemployee spouse too is allowed a choice. If the employee spouse continues to work, she may merely wait to draw her share

4

when he commences to receive benefits (with the possibility of increase as a result of his then greater age, longer service, and/or higher salary); or she may demand immediate payment to compensate for what would have been her share (without such possibility of increase). Thus, the nonemployee spouse has a choice of delayed benefits or immediate payment. If she decides on the latter, the employee spouse is given another choice. He may make arrangements to meet her demand for immediate payment; or he may simply retire and allow her to draw her share. In a word, the employee spouse has a final choice of satisfaction or avoidance." (*Id*. at p. 383.) And the nonemployee or nonmember spouse has a final choice of immediate payment or delayed payment. (*Ibid*.)

*Cornejo* held that, when the member becomes eligible for retirement but continues to work, and the nonmember chooses "immediate payment" of the nonmember's interest in the member's retirement plan, *the nonmember is entitled to that immediate payment on the date the nonmember files a motion seeking immediate payment*. (*Cornejo*, *supra*, 13 Cal.4th at p. 385.) *Cornejo* reasoned that this filing date is "bright" in that it "clearly constitutes the nonemployee spouse's choice of immediate payment," and "clearly puts the employee spouse on notice that he may exercise his choice of satisfaction or avoidance." (*Ibid*.)

2. Relevant Background

On July 17, 2020, Bibian filed a request for order (RFO), namely, a "*Gillmore* order" directing Dominic to pay Bibian her community interest in Dominic's retirement plan with the California Public Employees' Retirement System (CalPERS), along with attorney fees and costs. A "domestic relations order" (DRO) dividing the parties'

5

community property interests in Dominic's CalPERS plan was entered on Dec. 17, 2018. As of July 17, 2020, Dominic was eligible to retire but was still employed by his CalPERS-covered employer. Through her July 17, 2020 RFO, Bibian sought to enforce her rights under the DRO by obtaining immediate payment of her community property interest in the CalPERS plan.

Following several hearings and continuances, the court held an evidentiary hearing on the RFO on September 28, 2021. The parties submitted on their pleadings and declarations, and the court took the matter under submission. On October 28, 2021, the court took the matter out of submission and reappointed Richard R. Muir, the pension expert who had prepared the parties' DRO, to provide responses to two questions: "Can the CalPERS pension plan with the State of California divide the interest of the parties into two separate accounts to reflect their respective community property interests?" and "If the CalPERS pension plan with the State of California can separate the parties' respective community property interest into separate accounts, can the nonmember elect and receive her interest from the sub-divided account?"

On November 11, 2021, Mr. Muir filed a declaration responding to the court's questions. Mr. Muir explained that CALPERS could divide the parties' interests into separate accounts, but, for two reasons, the court could not force the nonmember, Bibian, to accept a segregated account. "First, CalPERS retirement formula age factor under a segregation of account will be for the age of nonmember and not the member. In this case, [nonmember] is 17 [years] younger than [member] so her age factor will result in a much lower benefit than the benefit which would be paid to member if he retired from

6

CalPERS. Second, a segregation of account freezes the compensation level used to calculate the nonmember's benefit at what the member's compensation was at the date of dissolution." For these reasons, Mr. Muir explained, the court could not "order a segregation of account without the approval of the nonmember."

Mr. Muir further explained that, if the parties were cooperative, they could enter into a "Friendly *Gillmore* solution." This would require Bibian to waive her right not to accept a segregated account and would require Dominic to agree "to pay the difference between the actual *Gillmore* amount due," i.e., what Bibian would have received from CalPERS if Dominic had retired on the date Bibian filed her RFO for the *Gillmore* order, "and the amount she would receive from CalPERS on a segregated account." Finally, a second CALPERS order was necessary to ensure "that what the member [(Dominic)] was paying as a *Gillmore* payment would be paid by CalPERS when the member [(Dominic)] eventually retires."

In sum, Mr. Muir explained that "a Friendly *Gillmore* involves first, a CalPERS segregation of account order. . . , second, a *Gillmore* order that orders the member to pay [the nonmember] the difference between the actual *Gillmore* amount and the amount [the] nonmember receives on the segregation of account order. The parties would have to agree that the amount is as and for nonmodifiable spousal support . . . and third, a supplemental order on CalPERS so that the lower *Gillmore* payment will be made from CALPERS once the member actually retires."

In response to the court's second question, Mr. Muir explained that a nonmember may begin collecting payments from CalPERS on a segregated account "once both

7

parties have reached age 50."  Under the segregation of account, Bibian "would be frozen at" Dominic's compensation level at the date of dissolution "instead of the current compensation level she is entitled to on her share of the service credits. "  But, without a "Friendly *Gillmore*" agreement, Dominic "would be required to pay the entire *Gillmore* amount" (the amount of Dominic's retirement pay that Bibian would be entitled to receive if Dominic retired on July 17, 2020).

Mr. Muir later prepared a Friendly *Gillmore* agreement for the parties.  On August 12, 2022, the *Friendly Gillmore* stipulation and order was filed.  Bibian and her counsel signed the stipulation on March 26, 2022; Dominic signed the stipulation on July 18; and, on August 12, the court signed the order on the stipulation.

Pursuant to the *Friendly Gillmore* stipulation and order, the court ordered Dominic pay Bibian $786 per month, on the first day of each month, beginning on July 17, 2020.[4] The stipulation and order states that the $786 amount is 13.66 percent of the "unmodified monthly benefit" that Dominic would have received had he retired and sought CalPERS benefits on July 17, 2020.  The $786 payments are "non-modifiable spousal support" and are to continue until the earlier of (1) the date Dominic retires and begins receiving CalPERS benefits, (2) the death of either party, or (3) further order of court. The stipulation and order allowed Bibian to request a wage assignment order on Dominic's employer to secure the $786 payments.  The court retained jurisdiction to amend the

---

[4]  A June 14, 2022 minute order shows the court determined that Bibian's *Gillmore* benefits would start on *Jully 7*, 2020.  The court ostensibly meant that the benefits would start on July 17, 2020, "the date of the filing" of Bibian's RFO.

8

order "to establish or maintain its qualification under" sections 2060 to 2610 "and to make any and all orders necessary to effect an equal division of the community interest" in Dominic's CalPERS plan.

On August 15, 2022, the court held a further hearing on Bibian's July 17, 2020 RFO and the status of the parties' "Friendly *Gillmore*" stipulation and order. Dominic questioned why the "start date" of the *Gillmore* payments was July 17, 2020, the date Bibian filed her RFO seeking *Gillmore* payments, rather than June 30, 2021, the date that the $786 amount of the Friendly *Gillmore* award was established. The court explained that *Gillmore* rights are "retroactive to the filing date" of the RFO. (*Cornejo*, *supra*, 13 Cal.4th at p. 385.)[5]

### 3. Analysis / The *Gillmore* Award Start Date

Dominic claims the court erroneously determined that the "start date" of Bibian's *Gillmore* payments was July 17, 2020, the date Bibian filed her RFO seeking a *Gillmore*

---

[5] Also on August 15, 2022, the court issued orders regarding Dominic's payment to Bibian of the $19,650 arrearage for the 25 monthly payments of $786 due between July 17, 2020 and August 15, 2022 (25 x $786 = $19,650), pursuant to the parties' Friendly *Gillmore* stipulation. To pay the arrearage, Dominic agreed to pay Bibian an additional $214 per month, or a total of $1,000 per month ($786 + $214 = $1,000) beginning on August 17, 2022, until the arrearage was fully paid. At Bibian's request, the court issued a wage assignment order for the $1,000 payments but explained to Dominic that he was required to make the payments until his employer began making the payments to Bibian. Dominic was ordered to pay Bibian $500 on August 17, 2022, and to begin making $1,000 monthly payments to Bibian on September 1, 2022. The court also ordered that, if Dominic missed four consecutive payments, including the partial payment of $500 due on August 17, 2022, the entire $19,650 arrearage would be immediately due.

award, rather than June 30, 2021, the date the $786 amount of the Friendly *Gillmore* award was established.  As noted, we find no merit to this claim.

Dominic argues that Bibian's RFO "was uncertain and not specific when it was filed on July 17, 2020," thus, the court "could not have made" a *Gillmore* award on July 17, 2020 "because it did not know what to award."  Dominic points out that, "on June 30, 2021, Bibian submitted "a declaration from her actuary fixing the *Gillmore* award at $786.00," based on Dominic's 2020 income information known to Bibian on July 17, 2020.  Dominic complains that the court then set a September 29, 2021 trial date on the RFO, "when it could have made the [*Gillmore*] award order" when Bibian submitted that she was entitled to receive $786 per month.  In sum, Dominic claims he "suffered a lot of prejudice/harm" because it took Bibian "approximately one year to complete her application and another one year for the court to make its ruling."  Dominic points out that Bibian did not "reac[h] out to CalPERS about segregation of accounts" until December 2021.

Dominic's arguments are unavailing.  As a matter of law, Bibian's right to receive a *Gillmore* award was fixed  on July 17, 2020, the date Bibian filed her RFO seeking payment of the value of her interest in Dominic's CalPERS plan.  (*Cornejo*, *supra*, 13 Cal.4th at p. 385.)  By operation of law, the date the RFO was filed is the date Bibian elected to receive "immediate payment" of her *Gillmore* award, instead of continuing to defer her right to that payment.  (*Id*. at pp. 383, 385.)  Because Dominic was eligible to retire on July 17, 2020, Bibian was entitled to receive *Gillmore* payments from and after July 17, the date she elected immediate payment.

10

That Bibian did not ascertain the $786 month value of her Friendly *Gillmore* award, as of July 17, 2020, until June 30, 2021, or nearly one year after she filed her July 17, 2020 RFO seeking a *Gillmore* award, does not change this result. Dominic has pointed to no authority, and we are aware of none, that requires a nonmember spouse to allege or state the value of their *Gillmore* rights when they elect immediate payment.

Further, Dominic has not suffered any prejudice or harm due to the retroactive application of Bibian's *Gillmore* award to July 17, 2020. On and after July 17, Dominic had all of the information he needed to calculate the value of Bibian's *Gillmore* rights as of July 17. Dominic knew his 2020 income, and he could have contacted CalPERS, as Bibian's counsel later did, for assistance in calculating the value of Bibian's *Gillmore* rights and establishing segregated accounts with CalPERS. Dominic also signed the "Friendly *Gillmore*" agreement, stipulating that the value of Bibian's Friendly *Gillmore* rights was $786 per month as of July 17, 2020. Finally, at the August 15, 2022 hearing, Dominic was not ordered to pay any interest on the $19,650 arrearage, the 25 payments of $786 that Dominic owed Bibian from July 17, 2020 through August 17, 2022.

B. *The October 6, 2022 Order Requiring Dominic to Pay $12,250 as Sanctions*

Dominic claims the court abused its discretion in ordering him to pay Bibian $12,250 in attorney fees and costs as sanctions, on October 6, 2022. (§ 271.) We find no abuse of discretion in the October 6 sanctions order.

1. Relevant Background

At the August 15, 2022 hearing on Bibian's July 17, 2020 RFO, and the parties' Friendly *Gillmore* stipulation, the court deferred ruling on the matter of Bibian's request

11

for attorney fees and costs set forth in her counsel's July 26, 2022 declaration, in order to give Dominic an opportunity to respond in writing. On August 23, 2022, Dominic filed a response. On October 6, 2022, the court issued a written ruling on Bibian's request. First, the court denied Bibian's request for attorney fees under sections 2030 and 2032 on the ground the parties were both "professionals working full time" and Bibian's net monthly spendable income was significantly higher than Dominic's.

Both parties requested sanctions pursuant to section 271. The court found both parties had "sufficient assets and income (homes with substantial equity, retirement accounts, land, etc.) to pay a monetary award . . . ." The court found, "[a]fter a careful review of all hearings and continuances" that had occurred in connection with Bibian's July 17, 2020 RFO seeking a *Gillmore* award, that Dominic had "frustrated the prompt resolution and settlement of this case. He requested multiple continuances. He did not actively cooperate and provide the opposing party with the necessary information needed to calculate the Friendly [*Gillmore*] payments. For several months, he refused to pay the amount owed to Mr. Muir to complete the Friendly *Gillmore* stipulation, and when the Friendly *Gillmore* stipulation was completed, he unnecessarily delayed in signing it, which resulted in the setting of additional hearings." Accordingly, the court ordered Dominic to pay Bibian $10,000 in attorney fees as sanctions "forthwith" and to "reimburse" Bibian "for the one-half payment she paid Mr. Muir, totaling $2,250.00," within 15 days of October 6, 2022. (The parties had agreed to evenly share Mr. Muir 's $4,500 fee for preparing the Friendly *Gillmore* stipulation, with each party paying Mr. Muir $2,250.)

12

2. Legal Principles

Section 271 allows the court to "base an award of attorney's fees and costs on the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a).) An award of fees and costs pursuant to section 271 "is in the nature of a sanction." (*Ibid*.) In ordering a sanction under section 271, the court is required to consider "all evidence concerning the parties' incomes, assets, and liabilities" and the court must not impose a sanction that places "an unreasonable financial burden" on a party. (*Ibid*.) We review a sanctions order under section 271 for an abuse of discretion. (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532.) The order " 'will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made.' " (*Ibid*.)

3. Analysis

Dominic claims the court abused its discretion in issuing the $12,250 sanctions order. He argues he "had absolutely nothing to do with the delay in the case," and that Bibian, her counsel, and the court are at fault for the approximate two-year delay in ascertaining the $786 value of Bibian's Friendly *Gillmore* award. He also argues that the court did not consider his income, assets, and liabilities in issuing the sanctions order, including the over $60,000 in liabilities he had for previous sanctions orders. He claims section 271 "is being used to silence [him] from engaging in legitimate legal proceedings."

13

Viewing the evidence in the light most favorable to the October 6, 2022 sanctions order, we cannot say that no judge could have reasonably made the sanctions order. Substantial evidence supports the court's finding that Dominic "frustrated the prompt resolution and settlement of this case" by requesting multiple continuances and by failing to "actively cooperate and provide the opposing party with the necessary information needed to calculate the Friendly *Gillmore* payments." As noted, from and after July 17, 2020, when Bibian filed her RFO seeking a *Gillmore* award, Dominic had all of the information Bibian needed to calculate the $786 amount of Bibian's *Gillmore* award, including his 2020 income, but the record shows that he did not promptly provide that information to Bibian. The record also supports the court's finding that Dominic refused to promptly pay the $2,250 amount (one half of Mr. Muir's $4,500 fee) that Dominic agreed to pay Mr. Muir to complete the parties' Friendly *Gillmore* stipulation; and, when the stipulation was completed, he unnecessarily delayed in signing it, resulting in the setting of additional hearings. Lastly, the record shows that the court expressly took Dominic's *and Bibian*'*s* income and assets and liabilities into consideration in issuing the sanctions award against Dominic. In light of the entire record, the court reasonably determined that the $12,250 sanction was justified and would not impose an unreasonable financial burden on Dominic. Thus, we find no abuse of discretion in the issuance of the sanctions order.

C. *Dominic's Judicial Bias and Conspiracy Claims Are Unfounded*

Dominic claims the court was biased against him because he represented himself, but there is no evidence the court ruled against Dominic based on his pro se status or

14

other judicial bias.  The fact the court ruled in favor of Bibian does not show bias by the court against Dominic.  (*Brown v. American Bicycle Group*, *LLC* (2014) 224 Cal.App.4th 665, 674.)  Dominic also claims Mr. Muir and Bibian were "collaborating with the court" to make "rulings favorable to" Bibian.  But there is no evidence that the court, Mr. Muir, and Bibian engaged in any conspiracy.  In sum, there is no evidence of any judicial bias or conspiracy against Dominic in any of the proceedings or rulings.  Thus, we find no merit in Dominic's claims.

D.  *The January 27, 2020 $24,781 Sanctions Order Is No Longer Appealable*

Lastly, Dominic challenges the court's February 8, 2021 order denying his September 3, 2020 motion to set aside the January 27, 2020 order directing Dominic to pay Bibian a total of $24,781.00 in attorney fees as sanctions.  (§ 271.)  The February 8, 2021 order was entered following a November 18, 2020 hearing on Dominic's September 3, 2020 motion.  In his motion, Dominic claimed the sanctions order should have been set aside based on Dominic's mistake, surprise, or excusable neglect.  (Code Civ. Proc., § 437, subd. (b).)

1.  Additional Background

The January 27, 2020 sanctions order is based on the court's September 19, 2019 findings and orders directing Dominic to pay Bibian $9,781 in sanctions by December 1, 2019, and an additional $15,000 in sanctions on or before February 1, 2020.  On March 5, 2020, the court issued an abstract of judgment for the January 27, 2020 $24,781 sanctions order and judgment, and Bibian recorded the abstract, placing a lien on Dominic's house.

15

On June 23, 2020, Dominic filed an RFO to set aside the January 27, 2020 sanctions order, which was denied following an August 25, 2020 hearing. Dominic claims he attempted to appear by phone at the August 25 hearing but was put on hold and later informed that his June 23, 2020 RFO was dismissed due to his failure to appear at the August 25 hearing. Dominic then filed his September 3, 2020 RFO to set aside the January 27, 2020 sanctions order.

2. <u>Analysis</u>

We do not have jurisdiction to consider Dominic claim that his September 3, 2020 motion to set aside the January 27, 2020 $24,781 sanctions order was erroneously denied. Dominic did not file a timely notice of appeal from the February 8, 2021 order denying his September 3, 2020 RFO to set aside the January 27, 2020 sanctions order. The record does not show that either party or the clerk of court served a notice of entry of the February 8, 2021 order. (Cal. Rules of Court, rule 8.104(a), (b).)[6] Thus, Dominic had 180 days from February 8, 2021 to file a notice of appeal (rule 8.104(c)), but he did not do so.

Dominic's failure to appeal the February 8, 2021 order precludes our consideration of his claim that the January 27, 2020 sanctions order and judgment should have been set aside. "The timely filing of a notice of appeal 'is an absolute prerequisite to the exercise of appellate jurisdiction; once the deadline expires, we have no power to entertain the

---

[6] Unspecified rule references are to the California Rules of Court.

appeal,' " and we must dismiss the appeal. (*The Inland Oversight Committee v. City of Ontario* (2015) 240 Cal.App.4th 1140, 1143-1144.)

E. *Our Construction of Dominic's Current Notice of Appeal*

On November 22, 2022, Dominic filed a notice of appeal from the judgment or order entered November 8, 2022, but the register of actions shows no judgment or order was entered on November 8, 2022. Instead, on November 8, 2022, Bibian's counsel filed a declaration regarding service on Dominic of counsel's proposed findings and orders made at the August 15, 2022 continued hearing on Bibian's July 17, 2020 RFO and the parties' Friendly *Gillmore* stipulation. The court did not sign Bibian's proposed findings and orders, but the record includes a reporter's transcript of the August 15 hearing, showing the orders made.

We have liberally construed Dominic's November 22, 2022 notice of appeal as being from the October 6, 2022 order requiring Dominic to pay Bibian $12,250 in sanctions, and the orders made at the August 15, 2022 hearing on the parties' *Friendly Gillmore* stipulation and order. "Generally, we must liberally construe a notice of appeal in favor of its sufficiency. (Cal. Rules of Court, rules 8.100(a)(2), 8.405(a)(3).) A notice of appeal shall be ' "liberally construed so as to protect the right of appeal if it is *reasonably clear* what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.)

It is reasonably clear that Dominic, in referencing the November 8, 2022 orders or judgment in his November 22, 2022 notice of appeal, intended to appeal from the

17

October 6, 2022 and August 15, 2022 orders. Bibian has also construed the notice of appeal as being from these orders. Thus, Bibian cannot have been misled by the notice's misdescription of the orders appealed. But, "it is well 'beyond liberal construction" to view an appeal from one order as an appeal from a 'further and different order.' " (*Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 225.) And here, there is no basis for constructing the November 22, 2022 notice of appeal as from the February 8, 2021 order. Further, an appeal from the February 8, 2021 order would have been untimely if filed on November 22, 2022. (Rule 8.104(c).)

## III. DISPOSITION

The court's August 15, 2022 and October 6, 2022 orders are affirmed. Bibian shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.