[No. G009728. Fourth Dist., Div. Three. Oct. 31, 1991.]

In re the Marriage of JEANNE and MELVIN JENSEN.
JEANNE JENSEN, Respondent, v.
MELVIN L. JENSEN, Respondent;
ORANGE COUNTY EMPLOYEES RETIREMENT SYSTEM, Appellant.

Counsel

Terry C. Andrus and Adrian Kuyper, County Counsel, and Donald H. Rubin, Deputy County Counsel, for Appellant.

Marjorie G. Fuller for Respondents.

Opinion

SONENSHINE, J.—Orange County Employees Retirement System (OCERS) contends the trial court erred in ordering it to pay directly to the former wife of one of its members, one-half of the community interest in the retirement benefits earned by the member spouse, despite the fact he had not yet retired from service. We agree.

I.

Melvin and Jeanne Jensen had been married for 22 years when, in June 1989, they separated. A marital dissolution proceeding was promptly initiated by Jeanne, and in January 1990, OCERS was joined as a party claimant. At a mandatory settlement conference in March, all issues were resolved except for disposition of the community interest in Melvin's pension/retirement account.

Melvin had been employed by the Orange County District Attorney's office since shortly after marriage. At the time of separation, he was eligible to retire but had elected not to. Nonetheless, Jeanne wanted immediate distribution of her interest in the plan. OCERS objected, claiming it was not required to disburse any funds until Melvin actually retired.

Judgment was entered as to all other issues, including an award of spousal support to Jeanne in the sum of $500 per month,[1] with the court reserving jurisdiction over the community interest in the plan. ██ ██ At a subsequent hearing,[2] counsel for OCERS pointed out that the contract for the

---

[1] The stipulated judgment provides that the spousal support payments are based upon Jeanne's net monthly income of $934.75, Melvin's net monthly income of $4,550, and an expectation that Jeanne will receive $905 per month from OCERS.

[2] Counsel for OCERS did not appear at the mandatory settlement conference but was present at this hearing.

An employee pension benefit plan, which has been joined as a claimant, is permitted to appear at any hearing in which the interests of the plan are at issue. However, attendance is not required. An order made at a hearing not attended by the plan is not final until 30 days

county retirement plan is as set forth in the Government Code and can be changed only by legislative mandate. He conceded the plan does not specifically prohibit early distribution of Jeanne's interest, but explained the plan does not authorize it either. Further, he asserted that none of the other statutes providing for similar orders covering contributions to the Public Employees Retirement System (PERS) and the State Teachers Retirement System (STRS) are applicable to county plans.

The trial court interpreted Civil Code section 4800.8[3] to mean "this court can make any order that is appropriate relative to this public plan provided it doesn't run afoul of other aspects of the law regarding the plan." OCERS's lawyer acknowledged the statute grants the court some discretion in fashioning orders which are necessary or appropriate. However, he insisted the order requested is inappropriate because it is not authorized by the Government Code or the terms of the plan itself.

Finally, at the conclusion of the hearing, the court asked, "One more question. Hypothetically, if this were a private plan, would the relief requested in the moving papers or the papers submitted by petitioner be appropriate?" Counsel for OCERS replied, "If it were a private plan, yes, it would be appropriate,"[4] whereupon the court said it was going to grant the request.

Pursuant to a notice of ruling filed June 14, prepared by Jeanne's attorney and approved by counsel for Melvin and OCERS as conforming to court order,[5] the court ordered OCERS to pay directly to Jeanne one-half of the community interest in the retirement benefits. As of July 1989, this amounted to a monthly benefit of $877.36 (one-half of $1,754.71), to be adjusted annually by cost-of-living increases commencing with the cost-of-living increase in 1990.[6]

---

after service of the order on the plan, except that during the 30-day period the plan may file a motion to modify or set aside the order. (Civ. Code, § 4363.2, subd. (d); see also *In re Marriage of Carnall* (1989) 216 Cal.App.3d 1010, 1016 [265 Cal.Rptr. 271].)

[3]Civil Code section 4800.8 provides, "The court shall make whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in *any retirement plan, whether public or private,* including all survivor and death benefits . . . ." (Italics added.)

[4]The Employee Retirement Income Security Act of 1974 (ERISA) provides that a qualified domestic relations order may require a pension plan to pay a former spouse his or her share of the benefits when the plan participant reaches retirement age but has not yet retired. ERISA does not, however, cover public pensions. (29 U.S.C. § 1003(b)(1).)

[5]At the hearing, the court orally granted the relief requested. A minute order reflects that ruling. The clerk's transcript contains no other order.

[6]The court ordered that the payments be retroactive to July 1989. Further, Melvin was restrained from making a beneficiary designation or any election in derogation of Jeanne's interest or which would impair said interest.

## II.

■■■■ The question presented is whether a public pension plan, such as OCERS, may be required, in the absence of specific provision in the plan, to disburse vested and matured community property retirement funds to a *nonemployee* spouse before the *employee* spouse actually retires. A similar issue was addressed recently in *In re Marriage of Nice* (1991) 230 Cal.App.3d 444 [281 Cal.Rptr. 415].

The husband in *Nice* was employed by the City of Los Angeles. Like Melvin, he had opted to continue working after separating from his wife, although he was eligible for retirement. His wife, however, wished to begin receiving her share of the community pension immediately. Citing Civil Code section 4800.8 and *In re Marriage of Gillmore* (1981) 29 Cal.3d 418 [174 Cal.Rptr. 493, 629 P.2d 1], the court ordered the board of pension commissioners to commence making payments.

The appellate court reversed. It noted *Gillmore* "nowhere requires the pension plan to pay instead of the employee spouse. Instead, *Gillmore's* sketch of the possibilities seems to make clear that the employee spouse— not the pension plan—must compensate the nonemployee spouse. The trial court retains discretion over the exact method of distribution. That discretion, however, does not appear to include shifting the responsibility for compensating the nonemployee spouse to a third party. While continuing employment, the employee spouse retains responsibility for compensating the nonemployee spouse whose community property interest has been impaired by the employee spouse's decision to continue employment. [Citation.]" (*Id.* at p. 450.) In essence, said the appellate court, "the trial court's order required the pension plan to pay benefits earlier than it would otherwise have had to do so, and to pay benefits while the employee spouse was still working, something it was not contractually obligated to do." (*Ibid.*)

We agree with *Nice's* holding. *Gillmore* permits a nonemployee spouse to begin receiving his or her share of retirement benefits as soon as the employee spouse becomes *eligible* to retire. The rationale for that holding was that "[a] unilateral choice to postpone retirement cannot be manipulated so as to impair a spouse's interest in those retirement benefits." (*In re Marriage of Gillmore, supra,* 29 Cal.3d at p. 423.) However, *Gillmore* does not identify the person or entity from whom the nonemployee spouse is to receive payment. Rather, noting there were various ways in which the employee spouse could "buy out" the nonemployee spouse's share and recognizing the parties may have preferences based on numerous factors not presently before the court, including tax consequences, the court left to the discretion of the trial court on remand the exact method of distribution. (*Id.*

at p. 429.) One possible scenario depicted payment by the employee spouse of an amount equivalent to the nonemployee spouse's interest. (*Id.* at p. 427.) But the *Gillmore* court said nothing which, in our view, could be construed as placing the onus on the retirement plan.

Moreover, the terms and conditions of OCERS, as set forth in section 31450 et seq. of the Government Code, do not permit the payment of benefits before the employee spouse retires. Pursuant to Government Code section 31673,[7] a member of OCERS is eligible to receive a retirement allowance only "upon retirement." Government Code section 31672 provides that a member who meets the qualifications for retirement "may be retired upon filing with the board a written application, setting forth the date upon which he [or she] desires his [or her] retirement to become effective . . . ." And, Government Code section 31680[8] suggests that an employee must actually stop working in order to receive retirement benefits.

Respondents acknowledge that the county retirement plan, unlike PERS and STRS, does not specifically provide for payment of benefits to a nonmember spouse. They also recognize it is impermissible for a court to make orders which enlarge the liability of the retirement plan beyond that which is required by contract. Nonetheless, they insist Civil Code section 4800.8 mandates the action taken by the trial court. They are wrong.

 As OCERS points out, the legislative intent behind this statute was to abolish the terminable interest rule "in order that retirement benefits shall be divided in accordance with [Civil Code] Section 4800." (Stats. 1986, ch. 686, § 2.) As we explained in *In re Marriage of Carnall, supra,* 216 Cal.App.3d 1010, the objective of section 4800.8 "is to ensure that [wife] and others similarly situated receive their full and fair community share of a spouse's retirement plan." (*Id.* at p. 1023.) The statute does not, however, permit the court to alter the terms of a contract.

Civil Code section 4800.8, as amended in 1988 (Stats. 1988, ch. 542, eff. June 1, 1988), requires and empowers the trial court to do whatever is "necessary or appropriate" to ascertain that each spouse receives his or her full share of the community retirement plan, whether public or private, including but not limited to ordering the division of accumulated contributions pursuant to Government Code section 21215 et seq. and Education

---

[7]That section provides: "Upon retirement for service a member is entitled to receive a retirement allowance which shall consist of: [¶] (a) His [or her] service retirement annuity. [¶] (b) His [or her] current service pension. [¶] (c) His [or her] prior service pension."

[8]That section provides, in part, "A member retired for service or disability shall not be paid for any service rendered by him [or her] to the county or district after the date of his [or her] retirement . . . ."

Code section 22650 et seq. (Civ. Code, § 4800, subds. (c) & (d).) In other words, the statute merely safeguards the spouses' respective interests by ordering the division of the community retirement plan *in accordance with the plan*; it does not circumscribe the manner in which the division of retirement benefits will be accomplished.

Rather, it is the retirement plans themselves, as spelled out in Government Code section 21215 (PERS) and Education Code section 22650 (STRS), which authorize the distribution of accumulated contributions to nonemployee spouses. A trial court has no authority to require disbursement of retirement benefits *other than as set forth in the plan*.

We are sympathetic to respondents' position. Indeed, as stated in Statutes 1988, chapter 542, section 8, "It is the intent of the Legislature that this act apply to *all public retirement benefits* in which there is an undivided community property interest and in all dissolution of marriage or legal separation cases which are pending on the effective date of this act or in which the court has reserved jurisdiction over the benefit or not yet awarded the benefit." (Italics added.) However, our hands are tied.

The county retirement plan does not provide for distribution of benefits to a nonemployee spouse before the employee spouse actually retires. Accordingly, OCERS did not anticipate making such payments. Until such time as the plan is amended by the Legislature, neither Civil Code section 4800.8 nor *In re Marriage of Gillmore, supra*, 29 Cal.3d 418 authorizes the action taken by the trial court.

The judgment is reversed and the matter is remanded to the trial court with directions to revise the judgment to provide that until such time as Melvin elects to retire, OCERS is not required to distribute to Jeanne her interest in Melvin's retirement benefits.[9]

Sills, P. J., and Wallin, J., concurred.

---

[9]We are aware that if Melvin were required to make the payments to Jeanne, the additional responsibility could impair his ability to pay spousal support. In that instance, a modification of support might be appropriate. (See *In re Marriage of Gillmore, supra*, 29 Cal.3d at p. 428.)