[No. B182713. Second Dist., Div. Six. Oct. 11, 2005.]

In re TODD LEE KINNAMON, on Habeas Corpus

318

**COUNSEL**

Richard B. Lennon, under appointment by the Court of Appeal, for Petitioner.

Gregory D. Totten, District Attorney, and Michael D. Schwartz, Deputy District Attorney, for Respondent.

OPINION

**YEGAN, J.**—Petitioner, Todd Lee Kinnamon, seeks the appointment of counsel for the purpose of obtaining forensic deoxyribonucleic acid (DNA) testing as to his conviction of attempted murder. Petitioner relies on Penal Code section 1405.[1] We accept the concession by the District Attorney of the County of Ventura that petitioner is entitled to the relief sought in the petition.

### Factual and Procedural Background

After a court trial, petitioner was convicted of attempted murder (§§ 187, subd. (a), 664), first degree residential robbery (§§ 211, 212.5, subd. (a)), receiving stolen property (§ 496, subd. (a)), and grand theft of a firearm. (§ 487, subd. (d).) The trial court found true allegations that Kinnamon: (1) had personally used a deadly or dangerous weapon (a knife) in the commission of the attempted murder and robbery (§ 12022, subd. (b)); (2) had personally inflicted great bodily injury in the commission of the attempted murder (§ 12022.7); (3) had been previously convicted of two serious or violent felonies within the meaning of California's "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12); and (4) had been previously convicted of two serious felonies within the meaning of section 667, subdivision (a). Petitioner was sentenced to prison for 81 years to life.

Petitioner appealed. In an unpublished opinion filed on May 31, 2000, we concluded that the trial court had erred in determining that it was required to impose consecutive prison terms for the attempted murder and robbery. We remanded the matter with directions that the trial court exercise its discretion whether to impose concurrent or consecutive terms for these offenses. In all other respects, the judgment was affirmed. (*People v. Kinnamon* (May 11, 2000, B134227) [nonpub. opn.] opn. of Perren, J., with Gilbert, P. J., Yegan, J., concurring.)[2] On remand, the trial court reimposed the original sentence. It ordered that the terms for attempted murder and robbery be served consecutively.

In April 2005 petitioner filed a request in the trial court for the appointment of counsel to prepare a motion for DNA testing pursuant to section 1405. In the request petitioner stated that he was not the perpetrator of the attempted

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Pursuant to Evidence Code sections 452, subdivdivision (d), and 459, subdivision (a), we take judicial notice of the record on appeal and opinion filed in No. B134227. We also take judicial notice of the superior court file (No. CR45855A).

murder, that DNA testing is relevant to his assertion of innocence, and that counsel had not previously been appointed under section 1405.

The trial court denied the motion in a minute order without setting forth any reason for the denial. Petitioner then filed a petition for a writ of mandate in this court. Petitioner alleged that DNA testing was necessary to prove that his codefendant, Starla Baker, had committed the attempted murder.

We treated the petition as a petition for a writ of habeas corpus. We ordered the Director of the California Department of Corrections to show cause why a writ of habeas corpus should not issue granting the requested relief.

The District Attorney of the County of Ventura responded to the order to show cause. In its response, the district attorney stated: "[W]e concede that petitioner is entitled to the relief sought in the petition, i.e., appointment of counsel pursuant to Penal Code section 1405 , subdivision (b)(1), to prepare a petition for DNA testing. (We do *not* concede that petitioner is entitled to the DNA testing itself.)"

*The Trial Court Did Not Have Discretion to Deny*
*Petitioner's Motion for the Appointment of Counsel*

■ Section 1405, subdivision (a), allows the filing of a motion for DNA testing by "[a] person who was convicted of a felony and is currently serving a term of imprisonment . . . ." Section 1405 was originally enacted in 2000 by Senate Bill No. 1342 (1999–2000 Reg. Sess.) (hereafter Bill No. 1342). (Stats. 2000, ch. 821, § 1.) Then, section 1405 required the court to "appoint counsel for the convicted person who brings a motion under this section if that person is indigent." (*Id.*, former subd. (c).) Pursuant to this language, an indigent convicted person arguably was not entitled to the appointment of counsel until after the filing of a motion for DNA testing. In the motion the convicted person must, inter alia, "[e]xplain, in light of all the evidence, how the requested DNA testing would raise a reasonable probability that the convicted person's verdict or sentence would be more favorable if the results of DNA testing had been available at the time of conviction." (*Id.*, subd. (c)(1)(B).)

■ Section 1405 was amended in 2001 by Senate Bill No. 83 (2001–2002 Reg. Sess.) (hereafter Bill No. 83). (Stats. 2001, ch. 943, § 1.) Pursuant to the amendment, an indigent convicted person need not file a motion for DNA testing to be entitled to the appointment of counsel. As

amended, section 1405 provides: "An indigent convicted person may request appointment of counsel to prepare a motion under this section by sending a written request to the court. The request shall include the person's statement that he or she was not the perpetrator of the crime and that DNA testing is relevant to his or her assertion of innocence. The request also shall include the person's statement as to whether he or she previously has had counsel appointed under this section." (*Id.*, subd. (b)(1).) If the court finds that (1) the person is indigent, (2) the request includes the required information, and (3) counsel has not previously been appointed under section 1405, then "the court shall appoint counsel to investigate and, if appropriate, to file a motion for DNA testing under this section and to represent the person solely for the purpose of obtaining DNA testing under this section." (*Id.*, subd. (b)(3)(A).) If counsel has previously been appointed, "the court may, in its discretion," again appoint counsel for the purpose of obtaining DNA testing. (*Id.*, subd. (b)(3)(B).)

■ In construing the 2001 amendment of section 1405, "[o]ur role . . . is to ascertain the Legislature's intent so as to effectuate the purpose of the law." (*In re Reeves* (2005) 35 Cal.4th 765, 770 [28 Cal.Rptr.3d 4, 110 P.3d 1218].) "In determining such intent, we begin with the language of the statute itself. [Citation.] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. [Citation.] 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' [Citation.]" (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

■ The language of the 2001 amendment is unambiguous. The court must appoint counsel for an indigent convicted person if the person's request includes the required information, provided that counsel has not previously been appointed for the purpose of obtaining DNA testing. The required information does not include a theoretical or factual showing of the relevance of DNA testing. A statement that DNA testing is relevant suffices. The appointment of counsel is discretionary only if counsel has been previously appointed under section 1405.

However, "it is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the Legislature did not intend. To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment. [Citation.]" (*In re Michele D.* (2002) 29 Cal.4th 600, 606 [128 Cal.Rptr.2d 92, 59 P.3d 164].)

■ In determining legislative intent, we may consider bill analyses prepared by the staff of legislative committees. (*People v. Benson* (1998) 18 Cal.4th 24, 34, fn. 6 [74 Cal.Rptr.2d 294, 954 P.2d 557].) An analysis of Bill No. 83 by the staff of the Senate Committee on Public Safety states: "The purpose of this bill is to allow for the appointment of counsel prior to the filing of a motion for post-conviction DNA testing . . . ." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 83 (2001–2002 Reg. Sess.) as amended May 1, 2001, p. 1.) The bill analysis observes: "When SB 1342 . . . was negotiated and then passed the Legislature last year there were discussions about making sure that the people bringing the motion had counsel even if they were indigent. That bill provided that counsel should be appointed after the person had brought a motion. What has become apparent since the bill took effect on January 1, 2001 is that it would be more efficient and equitable to appoint counsel at an earlier point in the process since many inmates do not have the ability to adequately file motions. . . . [¶] . . . [¶] This bill will provide for the appointment of counsel before during and after the motion is filed so that valid claims are not dismissed because an indigent person did not have the ability to file a proper motion. This should also help reduce the court's time because it is less likely that incomplete or frivolous motions will be filed." (*Id.*, at pp. 3–5.) The analysis notes that the author of the bill stated: "[E]arly appointment of counsel will help to streamline the process and ensure that frivolous or ill-prepared requests for DNA testing do not clog the courts and drain precious resources. This bill makes clear that counsel shall be provided for indigent inmates to investigate and prepare the motion, and litigate the motion to completion." (*Id.*, at p. 3.)

■ The bill analysis shows that the appropriateness of filing a motion for DNA testing is not to be determined when an inmate requests the appointment of counsel to prepare such a motion. The Legislature intended that this determination should be made by counsel after an investigation. The 2001 amendment provides that "the court [shall] appoint counsel to investigate and, *if appropriate*, to file a motion for DNA testing . . . ." (§ 1405, subd. (b)(3)(B), italics added.) The Legislature anticipated that, by requiring the appointment of counsel before the filing of the motion, it would help ensure that inappropriate motions would not be filed.

■ In determining legislative intent, we may also consider a senate floor analysis. (*Jevne v. Superior Court* (2005) 35 Cal.4th 935, 948 [28 Cal.Rptr.3d 685, 111 P.3d 954].) A Senate floor analysis of Bill No. 83 states that it "[r]equires the court to appoint counsel to investigate and, if appropriate, file a motion for post-conviction DNA testing if the convicted person is indigent, the request contains the required information, and counsel has not been previously

appointed. The appointment is discretionary if counsel has been previously appointed." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 83 (2001–2002 Reg. Sess.) as amended Sept. 12, 2001, p. 3.) The Senate floor analysis shows that the Legislature intended that the appointment of counsel be mandatory if an indigent convicted person's request contains the required information and counsel has not been previously appointed under section 1405. In such circumstances, there is no discretion to be exercised.

■ Thus, the legislative intent comports with the plain meaning of the language of the 2001 amendment of section 1405. Accordingly, it would be inappropriate for this court to add language giving the trial court discretion to deny an indigent person's request for the appointment of counsel when the request contains the required information and counsel has not been previously appointed under section 1405. As we noted in *People v. Buena Vista Mines, Inc.* (1996) 48 Cal.App.4th 1030, 1034 [56 Cal.Rptr.2d 21], "This court is loathe to construe a statute which has the effect of 'adding' or 'subtracting' language. [Citation.] . . . We are compelled to add language only in extreme cases where, as a matter of law, we are convinced that the Legislature, through inadvertence, failed to utilize the word or words which give purpose to its pronouncements. [Citation.]"

■ Petitioner's request for the appointment of counsel met the statutory criteria mandating that his request be granted. It is undisputed that petitioner is indigent. In the request he alleged that he was not the perpetrator of the attempted murder and that DNA testing is relevant to his assertion of innocence. He also alleged that counsel had not been previously appointed under section 1405. Our review of the superior court file supports this allegation. Pursuant to the letter of section 1405, the trial court did not have discretion to deny petitioner's request for the appointment of counsel solely for the purposes of section 1405.

## A   Suggestion to the Legislature

■ Cases are legion indicating that the courts do not judge the wisdom of a statute. That, however, does not mean that we are without power to suggest to the Legislature, in an attempt to remedy a perceived problem, that the sweep of its language is too broad. (See *Meritplan Ins. Co. v. Woollum* (1975) 52 Cal.App.3d 167, 176 [123 Cal.Rptr. 613]; see also *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 385 [127 Cal.Rptr.2d 917] (concurring opinion of Yegan, J.); Witkin, Manual on Appellate Court Opinions (1977) § 88, pp. 160–162.) By reason of the 2001 amendment of section 1405, each and every person incarcerated in state prison is entitled to the appointment of

counsel if he or she just drafts a request akin to the one drafted by petitioner herein. (See appen. A.) The prisoner's offense need have nothing to do with blood, hair, or the like. For example, a recidivist forger in state prison is now entitled to the appointment of counsel if he or she requests the appointment of counsel in a manner akin to the petitioner's request. The lax statutory standard will result in a wasteful expenditure of time and money where appointed counsel does not file a motion because it is not "appropriate."

The facts of the instant case have at least something to do with blood, although we have no idea just how this may aid petitioner. In our previous opinion in the appeal from the judgment of conviction, we summarized the facts as follows: "In January 1999, Kinnamon and his friend Starla Baker went to an office in Ventura. While Kinnamon was inside, Baker stole a car. When Kinnamon came out of the office, he got into the stolen car and drove off with Baker. Later, Kinnamon placed false license plates on the stolen car. In February 4, 1999, Kinnamon and Baker drove to the home of Michael Steven. Kinnamon wanted to get money from Steven's wife and also knew that Steven kept guns in a safe in the house. When Michael Steven told Kinnamon and Baker that his wife was not home, Kinnamon demanded that Steven open his safe. Steven refused and Kinnamon physically attacked him. During their fight, Kinnamon continued to demand that Steven open the safe. At the same time, Baker grabbed items of property which were in the house. Then, Kinnamon stabbed Steven with a knife nine times. Steven collapsed after the stabbing, and Kinnamon ran out of the house. Thinking Steven was dead, Kinnamon returned to the house and stole more property."

Our first opinion did not recite, but the record shows: (1) the victim, Michael Steven, positively identified petitioner as the only person who had attacked and stabbed him; (2) Starla Baker testified that she had tried to stop petitioner from stabbing Steven and "got cut in the process"; (3) petitioner told the police that Steven had stabbed Baker in the arm; and (4) after advisement and waiver of his constitutional rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]) petitioner admitted that he entered Steven's house to take his guns, that "it made him mad when he [Steven] stabbed his old lady [Baker] and he said 'I'd kill him again.' He [Steven] deserved to die." In view of these facts, even if a blood sample were collected and preserved and tied to Starla Baker by DNA testing, how would the test results "raise a reasonable probability that, in light of all the evidence, [petitioner's] verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of conviction"? (§ 1405, subd. (f)(5).) Based on the testimony of Baker and petitioner, one would have expected to find Baker's blood at the crime scene.

We have elaborated on our prior opinion to illustrate that the instant request is the start of a "wild goose chase" that will, in all probability, lead to absolutely nothing. In another context, we have said: "Somewhere along the line, litigation must cease." (*In re Marriage of Crook* (1992) 2 Cal.App.4th 1606, 1613 [3 Cal.Rptr.2d 905].) Petitioner's judgment is long final and there is something to be said for the sanctity of final judgments. The State of California has a "powerful interest in the finality of its judgments. This interest is particularly strong in criminal cases, for '[w]ithout finality, the criminal law is deprived of much of its deterrent effect.' [Citations.]" (*In re Harris* (1993) 5 Cal.4th 813, 831 [21 Cal.Rptr.2d 373, 855 P.2d 391].) In light of the deference owed to final judgments, at the very least prisoners should be required to make some showing that DNA evidence would raise a reasonable probability of more favorable treatment in the trial court before counsel is appointed. This is the original purport of section 1405 before Senate Bill No. 83 was enacted in 2001. (See, *ante*, p. 320.)

The Legislature has apparently made a value judgment that prisoners such as petitioner should have counsel appointed to investigate and, if appropriate, file a motion for DNA testing. The Legislature has given such prisoners more rights than a person filing a petition for extraordinary relief, who is not entitled to appointed counsel as a matter of right. (E.g., *People v. Shipman* (1965) 62 Cal.2d 226, 232 [42 Cal.Rptr. 1, 397 P.2d 993]; see also *People v. Chavez* (1966) 243 Cal.App.2d 761, 767 [52 Cal.Rptr. 633].) To be sure, there have been instances where DNA evidence has exonerated a convicted prisoner, and these cases have been sensationalized in the press. However, the vast majority of prisoners are in fact guilty and have been convicted and sentenced consistent with the full panoply of constitutional and statutory safeguards. Such prisoners have one traditional appeal as a matter of right and an unfettered ability to file petitions for extraordinary relief in the trial and appellate courts. In our view, these safeguards are sufficient to ensure that a truly innocent person is not unjustly convicted or sentenced. In the rare case where DNA evidence may exonerate a prisoner or reduce the prisoner's sentence, it is not too much to ask that he or she make some showing to that effect before counsel is appointed.

In enacting the 2001 amendment to section 1405, the Legislature "apparently succumbed to the discredited 'ideal of perfectibility' which is 'the concept that with the expenditure of sufficient time, patience, energy, and money it is possible eventually to achieve perfect justice in all legal process.' Such a 'noble ideal has consistently spawned results that can only be described as pandemoniac' in our criminal justice system." (*In re Pratt* (1980) 112 Cal.App.3d 795, 890, fn. 45 [170 Cal.Rptr. 80], quoting Fleming, The Price of Perfect Justice (1974) p. 3.)

*Disposition*

The petition for writ of habeas corpus is granted. The superior court is directed to vacate its order denying petitioner's request for the appointment of counsel pursuant to section 1405 and enter a new order appointing counsel solely for the purpose of (1) investigating the appropriateness of DNA testing as to petitioner's conviction of attempted murder; (2) filing a motion for DNA testing if counsel's investigation reveals that such testing is appropriate. The order to show cause, having served its purpose, is discharged.

Gilbert, P. J., and Coffee, J., concurred.

## APPENDIX A

Todo Lee Kinnamon P-50234

A-4. 136-c    RECEIVED
VENTURA SUPERIOR COURT

LAC. C. S. P        APR 08 2005

P.O. Box 8187

LANCASTER, CA 93539-8187.

Todo L Kinnamon

V

Ventura County Superior Court

FILED
APR 08 2005
MICHAEL D. PLANET
Executive Officer & Clerk
BY: _____, Deputy

CASE # CR 45855-A
MOTION To Request
Counsel To prepare,
1405,(B), (1) D.N.A Motion

IN THE Interest of Justice, I TODD Lee, KiNNAMON AM ASKing THis Court. Court Room #11 THe HonRable JUDGE KeN, W. Riley To AppoiNT Counsel ON THE D.N.A. MOTION For PeNAl code 187 (A) That I Todo Lee KiNNAMON am NOT THE PerpetrAtoR iN This SAiD Crime AND THAT D.N.A Testing is RelevANT To my assertion of INNocence, I Have NOT HAD Previously Counsel AppoiNted. UNDER this section. TheiFore I AM ASKing Pray of Relief From THis Court To GRANT. This Motion. FoR AppoiNTMENT OF COuNSel To, File MotioN, FoR Penal code 1405 D. N. A Testing

Respectfully
Todd L Kinn
Pro , Per
4-01-05