Filed 5/21/24  Marriage of Hart CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ELIZABETH KATHLEEN HART and ROBERT HART. | |
| ELIZABETH KATHLEEN HART, Respondent, v. ROBERT HART, Appellant. | F086051 (Tulare Super. Ct. No. VFL290175) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Robert Hart, in pro. per., for Appellant.

No appearance by Respondent.

-ooOoo-

This is an appeal from a judgment of dissolution of marriage between pro. per. appellant Robert Hart (Appellant) and respondent Elizabeth Hart (Respondent).[1] Appellant contends that the trial court erred by: (1) failing to admit an audio recording of Respondent and her friends improperly taking community assets; (2) failing to find that Respondent improperly took possession of $360,000 and 1,703 silver coins; (3) finding that community debt existed on two parcels of real property; (4) dividing the value of a car between Appellant and Respondent; (5) identifying a travel trailer as a community asset; (6) misidentifying the correct value of a bank account; and (7) improperly dividing credit card debts. Because we find error with respect to the division of the value of the car, we reverse.

## FACTUAL BACKGROUND

Appellant and Respondent were married for 34 years. Over the course of their marriage, they accumulated three pieces of real property (the "Dahlem Property," the "Dry Creek Property," and the "Three Rivers Property"), a number of silver coins and bars, substantial amounts of cash that were kept in house safes outside of the bank, firearms, several motor vehicles, and a number of tools and items used for farming, ranching, construction, and horse care. In February 2023, the Harts divorced.

Based on the record as a whole, the divorce and events leading up to it appears to have involved dueling allegations of emotional instability, abuse, and infidelity. The tipping point appeared to be January 18, 2022. On that date, Respondent claimed that Appellant engaged in domestic abuse. Appellant was arrested and taken to jail and remained there until January 20, 2022. While Appellant was in jail, Respondent with the help of two of her friends allegedly removed community assets from house safes (the

---

[1] Respondent did not file an opposition or otherwise appear in this appeal. While Respondent was not required to file an opposition, the absence of an opposition and answering reply deprives a reviewing court of one of the tools that helps to focus and crystalize the issues that will ultimately determine the outcome of the appeal.

2.

precise amount of funds removed is disputed). Respondent subsequently obtained a domestic violence restraining order and filed a request for legal separation, while Appellant filed a request for dissolution of the marriage.

## PROCEDURAL BACKGROUND

On January 21, 2022, Respondent filed a request for domestic violence restraining order. The request was granted on January 24, 2022.

On February 15, 2022, Respondent filed a request for legal separation.

Between December 8, 2022, and December 15, 2022, the family court received evidence and took testimony regarding the nature, extent, and value of the community estate.

On December 14, 2022, Appellant filed a supplemental brief regarding the admission of an audio recording that was taken on January 18, 2022, between Respondent and two of her friends discussing community assets/the house safes.

On December 16, 2022, the family court held a hearing (the December Hearing) in which it heard limited additional argument and announced its findings regarding the community estate. The court created a list, known as "the Propertizer," that identified community assets, valued the assets, and divided the assets between Appellant and Respondent. After dividing the assets and ordering the sale of the Three Rivers Property, the court found that an equalization payment from Respondent to Appellant in the amount of $35,621 was necessary.

On February 9, 2023, the family court issued and entered a judgment of dissolution of marriage. In part, the judgment identified the value of the community assets to be divided and ordered Respondent to make an equalization payment of $35,621 to Appellant, all consistent with the Propertizer.

On March 7, 2023, Appellant filed a motion to divide undivided property and correct errors in final judgment, which in part identified errors in the Propertizer. The motion was denied in its entirety by the family court on March 30, 2023.

3.

On April 4, 2023, Respondent appealed the judgment of dissolution.

## DISCUSSION

### Appellant's Argument

Appellant argues that the family court made several errors in its distribution of the community estate. Appellant contends that the court erroneously found that only $102,000 had been taken by Respondent from the house safes at the Dahlem Property to pay for legal expenses and disregarded evidence that Respondent had actually taken $360,000 and 1,703 silver coins. Relatedly, Appellant argues that the court erroneously refused to consider an audio recording of Respondent and her two friends discussing breaking into the house safes. Appellant also identifies five errors in the Propertizer. First, the Propertizer incorrectly states that debts of about $8,000 and $2,500 were owed on the Dahlem Property and the Dry Creek Property, respectively, when in fact no debts were owed. Second, the Propertizer incorrectly split the value of a Lexus automobile, when the asset was fully awarded to Respondent. Third, a travel trailer is listed as a community asset even though the trailer was sold to a third party prior to the date of legal separation. Fourth, the value of a checking account was determined and split without accounting for checks that were written before separation. Finally, credit card debt was incorrectly assessed entirely against Appellant. We find merit in one of Appellant's points.

### Legal Standard

In the absence of an agreement, a family court, during the course of a marital dissolution, must determine the assets and liabilities of the community estate. (*In re Marriage of Finby* (2013) 222 Cal.App.4th 977, 984 (*Finby*).) The family court must then value and divide equally the parties' community property estate. (Fam. Code, § 2550; *Sass v. Cohen* (2020) 10 Cal.5th 861, 885.) The family court distributes both the assets and the obligations of the estate so that the net assets awarded to each party after the deduction of the obligations are equal. (*In re Marriage of Walrath* (1998) 17 Cal.4th

4.

907, 924.) The family court has broad discretion to determine the manner in which the community estate is divided, although the estate must be divided equally in the absence of an agreement. (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 313.) The family court's division of the community estate, including issues concerning the valuation and apportionment of community property, are reviewed under the abuse of discretion standard. (*Ibid.*; *Finby*, at p. 984.) A trial court abuses its discretion when its decision exceeds the bounds of reason under all the circumstances present. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598; *Marriage of Oliverez*, at p. 313.) A trial court's factual findings regarding the existence of the parties' property are reviewed under the substantial evidence standard. (*In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578, 1584.) Substantial evidence refers to evidence that is legally ponderable and thus, reasonable, credible, and of solid value. (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 24, fn. 21.)

**Analysis**

### *Errors Related to Assets in the Floor Safe*

#### **Exclusion of the Audio Recording**

Appellant argues that the family court did not accept an audio recording of Respondent and her two friends discussing how to retrieve the contents of the house safes at the Dahlem Property. However, "[t]o demonstrate error, [an] appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see *Estrada v. Royalty Carpet Mills, Inc.* (2022) 76 Cal.App.5th 685, 730.) Appellant has not cited to any portion of the record that contains any evidentiary rulings by the court, let alone an evidentiary ruling relating to the audio recording. Further, appellant does not cite to any rule of evidence or case authority in support of his assertion of error. Because Appellant has not provided us with a record and argument that would permit us to conduct a meaningful review, Appellant has forfeited his challenge to the court's

5.

purported evidentiary ruling. (See *Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 631 (*CPGP*); *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808 (*Tobacco Cases*); *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

### Determination of Existence and Value of Assets

The family court addressed the existence of the alleged $360,000 and 1,703 coins in the house safes during the December Hearing. The court noted that the case as a whole was particularly difficult because the parties conducted most of their business through trusts and on a cash basis, primarily for the purpose of avoiding federal and state taxes. The court explained that the failure to use a bank meant that money placed in and taken from the safes would not be easily traced. The court noted that Appellant accused Respondent (with the aid of third parties) of taking the money and coins, while Respondent accused Appellant (with the aid of third parties) of taking the money and coins. The court stated that, based on their financial practices, Appellant and Respondent were not particularly credible. With one exception, the court also did not find any particular third-party witness to be less credible than another. "After hours of testimony" on the subject, the court could not determine the extent to which the assets ever existed, the composition and value of the assets in the safes, who took what amount of the assets, or where the assets may be, with the apparent exception of $102,000 taken by Respondent to pay attorney fees. The court found that $102,000 in legal fees was reasonable and would be considered a fee award to Respondent that was not subject to division.

In sum, the reporter's transcript shows that the parties' business practices and conflicting witness testimony made it impossible for the family court to find the existence of any assets beyond the $102,000 taken by Respondent for attorney fees. In other words, the court essentially resolved the issue by concluding that neither side had met their burden of establishing the amount and value of the safes' assets or which party was

in possession of those assets or responsible for depletion of those assets. As the trier of fact, it was the court's prerogative to assess the evidence and the witnesses. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582; *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.) The court was not required accept the testimony or arguments of Appellant, and we will not reconsider the court's credibility determinations. (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175 [appellate courts do not reweigh or reconsider credibility determinations]; *In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34 [same]; *In re Marriage of Friedman* (2002) 100 Cal.App.4th 65, 71 [same].)

Additionally, Appellant has not provided a transcript of the relevant testimony regarding the assets in the safes. Prior to the December Hearing, the court took four days of testimony in an attempt to determine and divide the community estate. However, the only transcript provided is that of the December Hearing. When a reporter's transcript is necessary for appropriate review yet not provided, courts presume that substantial evidence supports the court's findings. (*Trinity v. Life Insurance Co. of North America* (2022) 78 Cal.App.5th 1111, 1124, fn. 4 (*Trinity*); *Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 633, fn. 12 (*Shenefield*); *Estate of Fain* (1999) 75 Cal.App.4th 973, 993 (*Fain*).) This presumption leads to defeat of numerous issues on appeal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) Appellant has not overcome the presumption of substantial evidence in this case.

Given the court's explanation in the transcript provided, as well as the absence of a reporter's transcript that reflects the evidence and testimony relating to the Dahlem Property safes/assets, Appellant has failed to show that the court's actions were unsupported by substantial evidence. Therefore, Appellant has failed to show error.

**Errors in the Propertizer**

*Lines 1 and 2 – Real Property Debt*

The family court ordered that Respondent would be awarded the Dahlem Property and Appellant would be awarded the Dry Creek Property. The Propertizer reflects that $2,500 was owed on the Dry Creek property, and that $8,043 was owed on the Dahlem Property. Appellant argues that no debts were owed on these properties, and that the family court erred in concluding otherwise.

The Propertizer does not explain the nature of these debts. Nevertheless, contrary to Appellant's assertions, the reporter's transcript from the December Hearing shows that Appellant himself explained that $2,500 in property taxes were owed on the Dry Creek property. The transcript suggests that the court was unaware of the $2,500 debt until Appellant himself brought the issue to the court's attention. Since the $2,500 was added to the Propertizer as debt on Dry Creek at Appellant's prompting, Appellant is precluded from arguing that no debt was owed. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [explaining that, under the doctrine of "invited error," a party who induces the commission of an error is estopped from asserting the error as a ground for reversal on appeal].)

With respect to the Dahlem Property, the reporter's transcript does not appear to address debt owed on that property or explain the nature of the $8,043 obligation. However, Appellant cites no evidence or parts of the record that demonstrate no debts were owed or that explains why inclusion of the $8,043 obligation on the Propertizer was error. Instead, there is only Appellant's bare assertion that no debts of any kind were owed. Without at least citation to a portion of the record that supports his assertion, Appellant has not adequately developed his argument. The argument is therefore forfeited. (*CPGP*, *supra*, 43 Cal.App.5th at p. 631; *Tobacco Cases*, *supra*, 240 Cal.App.4th at p. 808; *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

### *Line 3 – Lexus Automobile*

The transcript of the December Hearing shows the family court ensured each party was awarded a separate vehicle. The court awarded a Lexus automobile to Respondent and awarded a Chevrolet pickup truck to Appellant. The values for both vehicles were obtained through the Kelley Blue Book, and the court stated that it would award the full value of the Chevrolet to Appellant and the full value of Lexus to Respondent. The court did not discuss either the Chevrolet or the Lexus any further. However, Appellant is correct that the Propertizer shows that the Lexus's $6,041 value was split between Respondent and Appellant, with Appellant being credited for a $3,021 asset and Respondent being credited for a $3,020 asset. On the other hand, the Propertizer shows that the full value of the Chevrolet was awarded to Appellant's assets.

We are satisfied that the record reflects error. The court clearly characterized the Lexus as only Respondent's asset, yet the Propertizer and judgment show that the asset was evenly divided, despite the absence of such a division with respect to Appellant's Chevrolet. In these circumstances, it is appropriate for the family court to correct the Propertizer and resulting judgment so that the entire value of the Lexus is listed as an asset of Respondent.

### *Line 9 – Travel Trailer*

Appellant argues that the travel trailer was sold to a third party. Appellant cites no documents or evidence in support of his assertion that the trailer had been sold prior to legal separation. Without at least supporting citations to the record, Appellant has not adequately developed his argument as it is based entirely on his bare assertions. The argument is therefore forfeited. (*CPGP*, *supra*, 43 Cal.App.5th at p. 631; *Tobacco Cases*, *supra*, 240 Cal.App.4th at p. 808; *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

Even if Appellant's argument was not forfeited, the family court addressed the travel trailer at the December Hearing. The court found that the trailer was a community asset. The court explained that it did not believe the testimony that a third party had

9.

purchased the trailer and that the documents submitted in support of the sale looked "made up." As the trier of fact, it was the court's prerogative to assess the evidence and the witnesses. (*Schmidt v. Superior Court, supra*, 44 Cal.App.5th at p. 582; *In re Jessica C., supra*, 93 Cal.App.4th at p. 1043.) Appellant presents no grounds for us to reconsider the court's credibility determinations. (*Marriage of Boswell, supra*, 225 Cal.App.4th at p. 1175 [appellate courts do not reweigh or reconsider credibility determinations]; *Marriage of Calcaterra & Badakhsh, supra*, 132 Cal.App.4th at p. 34 [same]; *Marriage of Friedman, supra*, 100 Cal.App.4th at p. 71 [same].) Therefore, we cannot conclude that there is error with respect to the travel trailer.

### *Line 10 – Checking Account*

Appellant contends that the family court incorrectly found that a bank account contained $1,931, and then divided the asset in half, with Appellant being allocated $966 and Respondent being allocated $965. However, once checks that were written before the marriage separation are deducted, the actual balance remaining in the account and thus, subject to division was $660. An equal distribution of $660 would result in Appellant and Respondent being allocated an asset of $330 each.

Assuming that the trial court erred in dividing $1,931 as opposed to $660, such an error does not entitle Appellant to relief. The effect on the Propertizer would be to lower the value of Respondent's assets by about $630 and Appellant's assets by about $630. The $35,621 equalization payment owed by Respondent to Appellant would remain unchanged when $630 is subtracted from each party's assets. It is true that the split of $660 would mean that each party received a totally equal share of the asset ($330 each), while a split of the $1,931 would mean that Respondent received $1 more of the asset (as reflected in the Propertizer). However, a difference of $1 is a legally de minimis trifle that will be disregarded. (Civ. Code, § 3533; *In re Marriage of Crook* (1992) 2 Cal.App.4th 1606, 1609, fn. 2 [declining to modify an award in which there was a de minimis $2.38 monthly discrepancy].) Therefore, correcting the $1,931 figure to $660

does not change any other aspect of the Propertizer or the court's judgment of division, which means Appellant was not harmed by the error. (Cf. *In re Marriage of Moore* (1980) 28 Cal.3d 366, 374 [finding that a court's error relating to parties' interests in a residence was not prejudicial].)

### *Lines 11, 12, & 13 – Credit Card Debt*

Appellant misapprehends the family court's actions with respect to the credit card debt from three credit cards. Because the Propertizer lists the value of each debt as a negative number and assigns each of the debts to Respondent, Appellant believes that he is responsible for the entirety of the combined debts. Appellant is incorrect. The credit card debt is listed as a negative asset, i.e., an obligation, of Respondent, meaning that the total value of the credit card debt has been *subtracted* from *Respondent's* assets. This is confirmed through simple addition and subtraction of the "after tax" value of Respondent's estate. If the court had treated the credit card debt as Appellant believes, the value of Respondent's assets would have been higher than the $817,464 listed on the Propertizer. In short, the error argued by Appellant simply does not exist.

### Resolution

Appellant has demonstrated the existence of one error. The Lexus automobile was awarded to Respondent as her personal vehicle. The entire value of the Lexis should have been awarded solely to Respondent, but the Propertizer shows that it was divided equally between Appellant and Respondent. The February 9, 2023 judgment orders an equalization payment of $35,621 from Respondent to Appellant, which is the same result found in the Propertizer. Therefore, because the Propertizer's "Lexus error" has impacted the judgment, reversal is appropriate.[2]

---

[2] Appellant's Opening Brief is somewhat unclear as to whether he is alleging error in the family court's failure to include a mower, a flatbed trailer, and a horse trailer as community assets in the Propertizer. To the extent that Appellant is alleging such an error, we cannot conclude that relief is appropriate. As is the case with other aspects of this appeal, Appellant has not provided an adequate record that reflects the family court's

## DISPOSITION

The judgment is reversed, and the matter remanded for the family court to vacate the finding (as reflected in the Propertizer) that the value of the Lexus be divided equally between the parties. The court shall enter a new order that allocates the entire value of the Lexus to Respondent and shall make any further additional and necessary calculations and orders that properly take into account the value of the Lexus as Respondent's asset.

POOCHIGIAN, Acting P. J.

WE CONCUR:

FRANSON, J.

DE SANTOS, J.

---

rationale for not including these assets. This leads us to presume that substantial evidence supports the court's decision. (*Trinity*, *supra*, 78 Cal.App.5th at p. 1124, fn. 4; *Shenefield*, *supra*, 75 Cal.App.5th at p. 633, fn. 12; *Fain*, *supra*, 75 Cal.App.4th at p. 993.) Further, Appellant's arguments are based on his assertions alone, without citation to authority or the record; this results in forfeiture of the issue. (*CPGP*, *supra*, 43 Cal.App.5th at p. 631; *Tobacco Cases*, *supra*, 240 Cal.App.4th at p. 808; *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)